[Civ. No. 12599. First Dist., Div. One. June 26, 1944.]

RICHARD S. STREETER, Appellant, v. GEORGE A. MARTINELLI et al., Respondents.

Harry A. Houser and Owen D. Richardson for Appellant.

Elliott, Atkinson & Sitton, Henry & Bedeau and Edward M. Fellows for Respondents.

KNIGHT, J.—The plaintiff, Richard S. Streeter, appeals from a judgment of nonsuit in an action arising out of a joint venture carried on under the name of Ice Bowl, Inc., in pursuance of which an ice skating rink was constructed and operated in San Jose, and toward the construction and operation of which plaintiff was induced to advance $31,000.

The complaint sets forth three causes of action, and according to the prayer the relief sought was to permanently enjoin a trustees' sale of the rink property, and to cancel two deeds of trust and the notes secured thereby; to obtain an accounting of the business venture; and to secure a decree quieting title to the rink property and the business, adjudging that plaintiff was the owner of a one-fourth interest in both, as provided in the written agreement entered into by the four parties to the venture.

Subsequent to the giving of the notice of the trustees' sale and prior to the commencement of this action one of the parties to the venture, George J. Hollenbeck, died, and at the trial of the action, after plaintiff had introduced the testimony of several witnesses, the trial court refused to permit plaintiff to testify as a witness in the case upon the ground that he was barred from doing so by the provisions of subdivision 3 of section 1880 of the Code of Civil Procedure. We are of the opinion that such refusal constituted prejudicial error, which calls for a reversal of the judgment.

Construing the evidence most strongly in plaintiff's favor, the essential facts of the case may be stated as follows: Ice Bowl, Inc., was incorporated on March 6, 1940, by Chas. S. Mabrey and two others named Johnson and Hann, all residents of Sacramento. They constituted the board of directors, and Mabrey was the active head of the corporation. On March 12, 1940, the corporation leased, with an option to buy, a piece of property in San Jose upon which to build the rink, and immediately thereafter let a contract for its construction. All of this was done before any stock was sold. At the end of March a permit was obtained from the Corporation Commissioner authorizing the sale for a limited time of a number of shares of stock under certain conditions, among which required the depositing in escrow of the money received from stock subscriptions. The stock selling campaign was not successful and this led to financial difficulties. Hollenbeck lived in or near Sacramento, and was associated with Mabrey in operating an ice skating rink in Sacramento, which had paid large profits; and through Mabrey he became interested in the San Jose enterprise. When Hollenbeck entered the venture Johnson and Hann stepped out and were succeeded on the board of directors by Hollenbeck and Richard H. Schwab. The latter is an attorney with whom Hollenbeck had transacted considerable business. He did not put any money into the venture, but at Hollenbeck's request accepted a place on the board of directors. To help finance the enterprise Hollenbeck obtained $36,750 on personal obligations from a Sacramento bank, and about a year later he was called upon to pay the same. In October, 1940, or thereabouts, it became evident that the permit to sell stock was about to be revoked for failure to comply with the escrow conditions; and the corporation needed more money to complete

the rink. Streeter was a prune grower in Santa Clara valley, and a distant relative of Mabrey, and his financial aid was solicited by Mabrey, Hollenbeck and a stock salesman named Fuller; and up to November 7, 1940, he was induced to advance sums amounting to $9,000, taking the corporation's notes therefor. On that date, November 7, 1940, the stock selling permit was revoked, but prior thereto and anticipating the revocation of the permit Hollenbeck and Mabrey conceived the plan of completing and operating the rink as individuals under the corporate name, Ice Bowl, Inc., but they needed much more money to do so. Finally Streeter was induced by Hollenbeck, Mabrey and Fuller to make additional advances, which eventually amounted to $22,000 on Hollenbeck's promise that he would see to it that Streeter would never lose any of his money. Positive testimony to this effect was given by Mabrey, Schwab, Fuller and the superintendent of construction named Libby. In consummation of the new plan and on November 9, 1940, which it will be noted was two days after the revocation of the permit, Schwab drew an agreement whereby Hollenbeck, Streeter, Mabrey and Schwab agreed to take over the completion of the rink and operate the same. The essential provisions of the agreement were as follows:

"WHEREAS, it has now developed that it is for the best interest of all of the parties hereto that in place of selling said stock to the public to finance the erection and construction of said ice rink themselves, and

"WHEREAS, the respective parties hereto have heretofore contributed to the cost of the erection and construction of said ice rink, and

"WHEREAS, it is the desire of the parties hereto to carry on said business in the name of ICE BOWL, INC., and

"WHEREAS, it is the desire of the parties hereto to define their respective interests in said ice rink,

"Now, THEREFORE, in consideration of the mutual promises of the respective parties hereto and other valuable consideration, it is hereby agreed by and between said respective parties that each of the parties above named shall own an undivided one-fourth interest in said Ice Rink and business.

"IT IS FURTHER UNDERSTOOD AND AGREED that each of the parties hereto shall be reimbursed for any and all advances made for the erection and construction of said Rink out of fifty per cent (50%) of the net income of said business.

"IT IS FURTHER UNDERSTOOD AND AGREED that the parties hereto will mutually agree upon salaries to be paid out of said project for the services of the respective parties which shall be paid out of the remaining fifty per cent (50%) of the net income of said business, and that any remaining portion of said last mentioned fifty per cent (50%) shall be set aside as an operating fund."

The rink was completed and opened for business on December 23, 1940, and with the exception of two months during the summer of 1941 was operated by the parties to the agreement up to April, 1942. However, during the five months following the opening, creditors were threatening suit, and some suits had been filed. Early in May, 1941, Wm. A. Sitton, an attorney in Sacramento, arranged with a client named Melick to lend the enterprise $30,000 on a trust deed and on certain conditions, among them being that Hollenbeck and Streeter would each advance an additional $5,000, and Mabrey $2,500; but this arrangement was terminated by the sudden death of Melick from a heart attack. Thereupon, Sitton arranged with Hollenbeck to furnish the $30,000 on the same conditions, and on May 27th and May 29th Sitton wrote two letters to Mabrey stating the conditions under which the money would be furnished. In the concluding sentence of each letter it was stated that a copy thereof was enclosed for Streeter; but Mabrey testified that he did not turn over a copy of either letter to Streeter, nor at any time inform him of the contents of either letter; nor is there any evidence showing that Streeter was aware of the conditions stated in Sitton's letters. However, the evidence shows that Streeter knew that Hollenbeck was going to furnish the $30,000, and that a trust deed was to be given covering the rink property, and he put up his additional $5,000, which with the $30,000 furnished by Hollenbeck was deposited in escrow. But as shown by the allegations of the complaint he claimed that the purpose of placing the trust deed on the property was to protect the interests of all the promoters of the enterprise against judicial seizure of the property by creditors.

Ten thousand dollars of the total amount thus advanced was used to buy the property on which the rink had been built, and the balance to satisfy claims of creditors. After the money was so deposited in escrow and on June 10, 1941,

the following transactions took place: The rink property was deeded by the owner through a title company to George A. Martinelli, title thereto admittedly being taken by him in trust for the corporation; Martinelli then gave Elwood Addison, Hollenbeck's son-in-law, a promissory note payable to Addison for the sum of $30,000, and to secure the payment thereof he executed a deed of trust covering the rink property, naming Sitton and D. M. McKee as trustees, and Addison as beneficiary; a deed was then executed by Martinelli conveying the rink property to the corporation, Ice Bowl, Inc., but the deed was withheld from record until December, 1941; because of a question of title Sitton insisted that a second deed of trust covering the rink property be given by the four parties to the agreement of November 9, 1940, which according to its terms was given to secure the payment of a promissory note for $30,000 executed in favor of Addison by the four trustors. Admittedly, however, Addison did not pay over any money in any of these transactions. He was merely acting for Hollenbeck.

In August, 1941, the articles of incorporation of Ice Bowl, Inc., were amended so as to increase the number of directors to five, and the two additional places on the board were filled by Hollenbeck's wife, his son or Addison. So far as the record shows Streeter was never made a director. Meetings were held frequently in Sacramento by the members of the board throughout this period, but it does not appear that Streeter ever attended any of them.

As stated, the rink was closed in April, 1942; and the following July the trustees gave notice that at the expiration of three months the rink property would be sold under the terms of the trust deed given by Martinelli. Subsequent to the giving of the notice of trustees' sale and prior to September 8, 1942, the exact date not appearing, Hollenbeck died. No part of the $31,000 advanced by Streeter was ever repaid to him from any source; and on November 10, 1942, he filed the present action.

Named and served as parties defendant were Martinelli, Sitton and McKee as trustees, Addison, Mrs. Hollenbeck and her son as legal representatives of the Hollenbeck estate, Mabrey and his wife, Schwab and his wife, and Ice Bowl, Inc., the corporation. All appeared in the action except the corporation, Ice Bowl, Inc., and at the opening of the trial plaintiff asked that its default be entered; and during the trial

plaintiff moved to dismiss as to the Mabreys and the Schwabs.

After plaintiff had introduced the testimony of five witnesses he was sworn as a witness and sought to testify in his own behalf, but counsel for defendants objected to his giving any testimony upon the ground that he was barred from so doing by the provisions of subdivision 3 of section 1880 of the Code of Civil Procedure. The trial court first overruled the objection but immediately afterwards defendant's counsel argued in support of the objection and thereupon the trial court ruled that plaintiff was barred from testifying. Plaintiff's counsel then, for the purposes of the record, started to make a statement of the facts he intended to establish by plaintiff's testimony, but on objection of defendants he was not permitted to do so. Defendants then moved for a nonsuit as to the first two causes of action, and the court, after first giving its reasons therefor, stated ". . . the motion for nonsuit is granted"; whereupon counsel for plaintiff inquired, "On the first two causes of action?" and the court replied "On all causes of action. Mr. Richardson [counsel for plaintiff] : The motion was only directed to two of them. Mr. Bedeau [representing the defendants] : We move to amend the motion for nonsuit heretofore made by including therein and adding thereto the third cause of action [to quiet title to the property and the business]. The Court: Motion to amend is granted."

Subdivision 3 of section 1880 of the Code of Civil Procedure upon which the trial court based its ruling barring plaintiff from testifying is as follows: "The following persons cannot be witnesses: . . . 3. Parties or assignors of parties to an action or proceeding, or persons in whose behalf an action or proceeding is prosecuted, against an executor or administrator upon a claim, or demand against the estate of a deceased person, as to any matter or fact occurring before the death of such deceased person." But as stated in California Jurisprudence (vol. 11A, 888-9) : "The statute applies its inhibitions to parties or assignors of parties to an 'action or proceeding . . . against an executor or administrator, . . . upon a claim or demand against the estate of a deceased person,' and does not apply when the action is not upon a claim or demand against the estate. The statute is not extended by construction to apply to cases not within its terms, or to apply to all actions brought against an executor

or administrator, although the reason for the rule might be as applicable to other cases as to the case of a money claim against the estate. It does not disqualify the defendant party.'' And in applying the foregoing doctrine it is held that suits based on claims to property adverse to the estate of a decedent are not within the statute, because, if the property belongs to the claimant, the recovery does not diminish the estate to which the judgment might decide it did not belong. (11A Cal.Jur. 890.) ■ As also pointed out in California Jurisprudence (vol. 11A, 893): ''Suits to recover property or establish title thereto against the estate do not aim to take from the estate or diminish it and are not claims against it, and the plaintiff may testify in his own behalf. Hence, neither an action to have deeds absolute declared mortgages and for reconveyances upon payment of the amount adjudged due, nor a suit to declare a partnership in property and for an accounting of the proceeds of its sale is one upon a claim against the estate. So also a suit to set aside a deed to the decedent for fraud in procuring it is not a claim against the estate, but is brought to establish the fact that the land never became a part of his estate.'' ■ Moreover, it is well settled that an action to quiet title as against an estate is not a controversy involving a claim or demand against the estate within the meaning of subdivision 3 of section 1880. (11A Cal.Jur. 893; *Hector* v. *Superior Court,* 15 Cal.App.2d 552 [59 P.2d 591]; *In re Hill,* 13 Cal.App.2d 326 [57 P.2d 155].)

In the present case the third cause of action set forth in the complaint is admittedly one to quiet title to the rink property and the business, based on the four party agreement which is made part of the complaint; and clearly under the cases above cited plaintiff was a competent witness to testify in his own behalf in support of such cause of action. As to the first and second causes of action, it may be conceded that they were not pleaded as clearly as might be desired, but it is apparent from the allegations thereof and the prayer of the complaint that the purposes of those causes of action were to obtain a decree cancelling the two deeds of trust and the notes secured thereby upon the grounds of actual and constructive fraud on the part of Hollenbeck, and to secure an accounting of the business carried on under the four party agreement. With respect to the charges of fraud it

was alleged in substance that the four party agreement was obtained through fraudulent promises made by Hollenbeck that if plaintiff would furnish financial aid to complete the construction of the rink and to carry on the business he, Hollenbeck, would not cause a sale of the property to be made, and would save plaintiff harmless from the loss of any money so advanced by him; that the only purpose of the execution of the two trust deeds and the notes in favor of Addison was to protect all of the promoters of the enterprise, and to secure to them, out of the net income of the business, the repayment to them of the moneys they had advanced; that there was no other consideration for the trust deeds or the notes; that Addison was "a merely nominal payee and beneficiary" acting for the protection of all of the promoters. It was further alleged, on information and belief, that 50 per cent of the net income from the business exceeded $100,000, which "was and is ample to have reimbursed this plaintiff for the said amount of money so advanced by him." It may be that if plaintiff had been permitted to testify, his testimony would not have been legally sufficient to justify a finding of fraud or to warrant the cancellation of the trust deeds and notes; but in the present state of the record it cannot so be held as a matter of law, because his counsel was denied the right to state the facts he intended to establish by plaintiff's testimony.

The first cause of action is made up of twelve separate paragraphs, the first of which embodies allegations to the effect that plaintiff presented a claim against the Hollenbeck estate for $31,000 based on the four party agreement, and that the claim was rejected; and defendants seem to take the position that because of the presence of those allegations the first cause of action must be construed as one to recover a money judgment against the Hollenbeck estate on the rejected claim. But no such relief was sought by the action, and at the opening of the trial counsel for plaintiff stated that such was not the purpose of the action, and that the presentation of the claim was in fact wholly unnecessary. In this respect Mr. Richardson, one of plaintiff's attorneys, stated in part: "We think we are entitled to have these deeds of trust cancelled and our title quieted to one-fourth of the property, both real and personal, on those premises; that the Ice Bowl is by all pleadings declared to be a trustee

for the benefit not only of our client, but of the other promoters; that the estate of George J. Hollenbeck, deceased, and Messrs. Mabrey, Schwab, and Elwood Addison, the beneficiary named, be declared to be just nominal owners and not having any interest in the deeds of trust or net profits of the corporation or anything else." Later on, during the course of the trial, the following took place: "The Court: ... As I understand, Mr. Houser [plaintiff's other counsel], you are not making a claim against the Estate of Hollenbeck? Mr. Houser: No; this is on the fraud ... and for the interest in the real estate. The Court: Not against the estate? Mr. Houser: That's correct." At an earlier stage of the trial Mr. Richardson in response to an inquiry made by Mr. Sitton concerning the third cause of action stated in effect that he believed plaintiff was "entitled" to his money against the Hollenbeck estate; and immediately following the discussion between the court and Mr. Houser, above quoted, Mr. Richardson stated that plaintiff was "asking a money judgment on the ground of fraud and for damages sustained by reason of it." Irrespective, however, of the statements of counsel, it is obvious that under none of the causes of action pleaded in the complaint in this action could a money judgment of any kind have been rendered against the Hollenbeck estate. Moreover, as indicated by the remarks of the trial court in granting the nonsuit, it treated the action as being one for the cancellation of the trust deeds and notes upon the ground of fraud; and that the basis of its decision in granting the nonsuit as to all three causes of action was that no evidence had been offered "to show that any of the defendants took undue advantage or exercised any fraud against Mr. Streeter." It must be borne in mind, however, that this conclusion was reached without affording plaintiff the right to testify in support of his case.

The cases cited by defendants in support of the trial court's ruling barring plaintiff from testifying are not in point. In *George* v. *McManus*, 27 Cal.App. 414 [150 P. 73], the action was one to recover a money judgment for damages against the estate of the decedent on account of the negligent destruction of plaintiff's automobile. The other cases involved actions for the recovery of money judgments against the es-

tates of deceased persons, either on rejected claims or for services rendered the deceased.

The judgment is reversed.

Peters, P. J., and Ward, J., concurred.

A petition for a rehearing was denied July 26, 1944. Peters, P. J., being absent, did not participate. Respondents' petition for a hearing by the Supreme Court was denied August 24, 1944.