[Civ. No. 15722. Second Dist., Div. One. Nov. 17, 1947.]

CARLO PANNO, Respondent, v. MARY RUSSO, as Administratrix, etc., et al., Appellants.

John Van Aalst and Whitelaw & Whitelaw for Appellants.

Henry O. Wackerbarth and Edward J. Cotter for Respondent.

WHITE, J.—This is an action for damages arising out of the alleged breach by a partnership of a contract to sell to plaintiff a crop of oranges. Louis Russo, the active member of the partnership, and who conducted the transaction here involved, died prior to the commencement of the action. Plaintiff joined as defendants the surviving partners, the administratrix of the estate of the deceased partner, and others. From a judgment in favor of plaintiff and against the surviving partners and the administratrix, this appeal is prosecuted.

In his complaint plaintiff alleged that on November 23, 1943, Russo Brothers, a copartnership composed of Louis, Joseph and Tony Russo, entered into a written agreement, entitled "Bill of Sale," the pertinent portions of which are as follows:

"We, Russo Bros. agree to sell and Carlo Panno agrees to buy the entire crop of 160 acres, or approximately 55,000 boxes of Valencia oranges . . . for the purchase price of Three and One Quarter (.03¼) cents per pound FOB roadside in buyer's containers.

". . . The sellers agree to irrigate and take care of the crop to maturity in a good and farmerlike manner, but are not to be held responsible for any damage done by wind, or any other act beyond their control.

"The sellers hereby acknowledge the deposit payment of Five Thousand ($5,000.00) Dollars.

"The Buyer agrees to pay an additional advance of Twenty Thousand ($20,000.00) Dollars, January 1st, 1944, and pay weekly for all oranges delivered to him. . . ."

This agreement was executed by Louis Russo, now deceased, on behalf of the partnership, Russo Brothers.

Plaintiff further alleged that on January 3, 1944, he paid to Russo Brothers the sum of $10,000, being one-half the payment required by the contract, which sum Russo Brothers accepted and "thereupon waived the payment, at that time, of the remaining sum of $10,000 due on said 1st day of January, 1944, and agreed that said additional sum of $10,-000 need not be paid . . . until demand therefore was made . . ." That Russo Brothers never at any time demanded payment of the $10,000 balance, but on February 3, 1944, sold the orange crop in question to other parties, and on February 4, 1944, notified plaintiff that they had canceled their agreement with him; whereupon plaintiff offered to pay the balance of $10,000 and made a tender thereof to Russo Brothers, which tender was refused.

The theory of plaintiff's first cause of action is that payment of the full $20,000 as required by the agreement was waived by the partnership, acting through Louis Russo, and the second cause of action alleges that Russo Brothers and plaintiff made an oral agreement permitting a delay in payment of the second $10,000 until requested; that pursuant to such oral agreement plaintiff paid the sum of $10,000 and Russo Brothers accepted the same, and that Russo Brothers are estopped from denying the validity of such oral agreement for the reason that Louis Russo told plaintiff he "would let the plaintiff know when he needed the balance of said payment," and that thereafter no demand was made for such balance. Plaintiff testified to conversations with the deceased Louis Russo subsequent to the execution of the

agreement in support of the allegations above set forth. On January 1, 1944, when the $20,000 payment was due, plaintiff forwarded a check for $10,000, bearing the indorsement, "2nd dep Cudahy Val Crop 10,000," which check was accepted and cashed by the partnership.

The first point relied upon for reversal is that respondent failed "to establish a waiver or an estoppel of the right to rescind" the contract for failure to make the full payment of $20,000 as required by the terms of the contract. In this connection appellants urge that the testimony of plaintiff as to the statements of the deceased partner, Louis Russo, and the oral understanding between plaintiff and Louis Russo that payment of the full $10,000 balance need not be made until requested, violated the parol evidence rule; that such oral agreement was not an "executed oral agrement," as required by section 1698 of the Civil Code; and that the evidence does not support a finding that there was a waiver— that is, an intentional relinquishment of the right to insist upon payment in accordance with the terms of the agreement. This contention may not be sustained. In addition to the testimony of plaintiff as to his conversations and understanding with Louis Russo contemporaneously with the execution of the agreement and thereafter, the evidence showed that when the $20,000 payment became due on January 1, 1944, Russo Brothers accepted a payment of only $10,000, made no demand for further payment, and did not give notice of rescission for failure to make such further payment for a period of a month, attempting to rescind only after they had sold the crop to another purchaser at a more profitable figure than was called for by their contract with plaintiff. When Louis Russo returned to plaintiff the $15,000 he had paid on the contract, he accompanied the check with a letter which contained the statement, "However, I did verbally extend the date on the last advance payment until January 10th." There was also testimony by a witness present at conversations between plaintiff and Russo after the attempted rescission, in which plaintiff asked Russo, "Didn't we agree that you would call up when you were in need of money?" to which Russo replied, "I have been so sick I don't know what I am doing half the time." In these conversations Russo did not deny the understanding as to delay in payment. There was also evidence that during the period of approximately one month after the payment of the $10,000, plaintiff and defendant met on several occasions, had other business dealings for the pur-

chase and sale of fruit, and that not only was it agreed that plaintiff would pay the additional $10,000 when demanded, but also that plaintiff would, if requested, advance further sums above those required by the contract if needed by Louis Russo in the conduct of his business. In the circumstances above narrated, it cannot be held that the conclusion of the trial court that the partnership waived the right to rescind and was estopped to deny the agreement to postpone payment are without substantial support in the evidence.

It is well settled that the rule against varying the terms of a written instrument by parol or seeking to alter a contract in writing other than by a contract in writing or an executed oral agreement, is subject to the exception that a party to a contract may by conduct or representations waive the performance of a condition thereof or be held estopped by such conduct or representations to deny that he has waived such performance. Whether the established facts in any given case constitute an estoppel or a waiver is not always easily distinguishable. (*Bastanchury* v. *Times-Mirror Co.*, 68 Cal.App.2d 217, 240 [156 P.2d 488].) "Waiver" has been repeatedly defined as "the intentional relinquishment of a known right or such conduct as warrants an inference of the relinquishment of such right, and may result from an express agreement or be inferred from circumstances indicating an intent to waive." (*Bastanchury* v. *Times-Mirror Co., supra,* p. 240; *Johnson* v. *De Waard,* 113 Cal.App. 417 [298 P. 92].) The language used in *Sessions* v. *Southern Cal. Edison Co.,* 47 Cal.App.2d 611, 619 [118 P.2d 935], with reference to promissory estoppel, is here applicable: "That doctrine is 'distinct from the ordinary equitable estoppel, since the representation is promissory, not a misstatement of an existing fact. The promisor misstates no facts; he says, at most, simply, "I will perform though you do not comply with the condition," or, "though you subject yourself to a legal defense." To bring the case within the reason of the rule it is essential that the promisee could and would have performed the condition, or would not have allowed the defense to arise, had it not been for the promisor's waiver.' (3 Williston on Contracts, sec. 689.)" So here, there was evidence that respondent could and would have paid the $10,000 balance upon demand, but that no demand was made, and approximately a month after receiving and accepting a check for one-half the amount due, Louis Russo, in behalf of the partner-

ship, tendered back all that plaintiff had paid and gave him no opportunity to cure the alleged default in payment.

There is ample evidence to support the findings that the deceased partner, in behalf of the partnership, waived a provision of the contract made for the benefit of the partnership and that by reason of the conduct of the deceased partner the doctrine of estoppel was properly invoked against the appellants.

It is next asserted that plaintiff was not competent to testify to facts which took place prior to the death of Louis Russo.

In the case at bar it is manifest that the administratrix of the estate of the deceased partner, Louis Russo, was ''a necessary party to a complete determination or settlement of the question involved therein.'' (Code Civ. Proc., § 379.)

Concerning the effect of the provisions of subdivision 3 of section 1880 of the Code of Civil Procedure, it must be borne in mind that the claim of respondent was not a claim against the estate of the deceased partner, but a claim against the partnership of which he was a member. That the inhibitions of subdivision 3 of section 1880 of the Code of Civil Procedure are not under the circumstances here present applicable, was the clear and decisive holding in the case of *Cullinan* v. *McColgan*, 87 Cal.App. 684 [263 P. 353], where, at page 699, it is said:

''Appellant objected to Mr. Cullinan testifying to declarations made to him by D. A. McColgan, who died prior to the commencement of the action, in the absence of appellant, which objections were overruled by the court, appellant claiming that the estate of the decedent would be adversely affected by a judgment against the surviving partner. This is an action against a surviving partner and is neither against 'an executor or administrator' nor 'upon a claim or demand against the estate of a deceased person.' So far is a surviving partner from being the same as an executor or administrator of a decedent's estate that he is barred from appointment as such (Code Civ. Proc., § 1365), and the executor or administrator has no voice in the settlement of the partnership affairs (Code Civ. Proc., § 1585). Subdivision 3 of section 1880 of the Code of Civil Procedure has always been strictly and literally construed and has never been extended to cover cases nor parties not within the express terms of the statute . . . (citing cases) . . . .''

The view expressed in the case just referred to, that subdivision 3 of section 1880 of the Code of Civil Procedure is not to be extended to cover cases or parties not within its express terms, has been followed in numerous cases and under varying factual situations. In *Streeter* v. *Martinelli*, 65 Cal.App.2d 65, 71 [149 P.2d 725], in holding that the statute does not apply to actions seeking to recover property or establish title thereto as against an estate, it was said (quoting from Cal. Jur., vol. 11A, pp. 888, 889) : ''The statute is not extended by construction to apply to cases not within its terms or to apply to all actions brought against an executor or administrator, although the reason for the rule might be as applicable to other cases as to the case of a money claim against the estate.'' See, also, *Jones* v. *Clark*, 19 Cal.2d 156, 161 [119 P.2d 731], an action for specific performance of a contract to devise property. The authorities base their decisions upon the ground that the claim is not one against the estate, but to recover property which does not belong to the estate.

There is no difficulty in holding, under the authorities cited, that in an action against surviving partners a plaintiff may testify to matters occurring prior to the death of a deceased partner, whether such testimony relates to transactions with the deceased partner or with others. However, in the cases called to our attention or found by our own research, either no judgment was sought against the estate or the court held that no such judgment could be rendered. In the present action judgment was sought and obtained jointly against the administratrix (payable ''in due course of administration'') and the surviving partners.

To us it seems clear that in a situation such as is here presented the claim must be viewed as one against the firm, the partnership entity, rather than against the estate. The testimony of plaintiff established the debt or liability of the firm of which decedent was a member. That the establishment of such debt operated indirectly to diminish the assets of the estate does not justify relieving the estate of liability by invoking the code section in question. Although in the cited cases it was held that the action was not against the estate because no recovery was sought against it and no claim filed, we perceive no reason for a different rule in the two situations—the one where recovery against the partnership may presumably operate to diminish the estate as and when an accounting is had between the estate and the surviving partners, and the other, where, after partnership property

is exhausted, resort is had to other assets of the decedent. In either event, the foundation of liability is a claim against the firm of which decedent was a member.

 Appellants' contention that the evidence produced in support of damages is speculative and not in accordance with the principles laid down for the determination of the measure of damages cannot be sustained. There was ample evidence to show that respondent was unable to procure other desert Valencia oranges; that while there were other crops in the Coachella Valley, such crops had all been sold or were under contract of sale to other parties at the time appellants breached the contract. The measure of damages was the loss directly and naturally resulting from the seller's breach of contract, which would be the loss of the profit which respondent would have made had the fruit been delivered and had he been permitted to resell the same. (Civ. Code, §§1786, 1787; *Coates* v. *Lake View Oil & Refining Co.*, 20 Cal.App.2d 113, 116 [66 P.2d 463].)

We find no error in the record.

The judgment is affirmed.

York, P. J., and Doran, J., concurred.