[Civ. No. 4035. Fourth Dist. May 10, 1950.]

BERVERDOR, INC. (a Corporation), Plaintiff and Appellant, v. SALYER FARMS (a Partnership) et al., Defendants and Appellants.

Wingrove & Brown, Meredith Wingrove, Lee G. Brown, Berger & Irell, Clinton F. Seccombe and Richard S. Brawerman for Plaintiff and Appellant.

Sidney J. W. Sharp, Herbert M. Braden and Lawrence W. Clawson for Defendants and Appellants.

SHEPARD, J. pro tem.—Plaintiff sues for $11,100 rent on a farm lease, together with interest from due date, costs and attorneys' fees. Trial was had before the court without a

jury and judgment was rendered for plaintiff for $7,479.61, including $1,000 attorneys' fees and for costs, but without interest. Both plaintiff and defendants have appealed.

About 7 August, 1944, plaintiff let to defendants by written lease certain lands in Kings County, near Tulare Lake. This land had in some previous years been irrigated with water from Tulare Lake.

The lease provides for a term of three years from 1 October, 1944, at a total rental of $33,300, payable $5,500 on 1 October and 1 June each year of the term. It provides that lessee shall pay lessor's expenses, including attorneys' fees, to be fixed by the court in any action to enforce payment of rent due. Other stipulations of the lease relate to farming methods, oil drilling rights, assignments, repair, indemnity, surrender and holding over, and do not directly concern this controversy.

Defendants failed to pay the stipulated rent amounting to $11,100 for the last year of the term and plaintiff sued to recover that sum, with interest and costs and attorneys' fees.

Defendants' answer admits the execution of the lease but avers that the rental payments were conditioned upon it being profitable for defendants to pay the rentals referred to, alleges such payments were unprofitable and that the written lease referred to in plaintiff's complaint is only a part of the whole agreement. Then follows a statement of income and expense from the farm operations to show that said payments were actually unprofitable. Failure to pay is admitted, but defendants aver nothing is due. The allegation of the lease provision for attorneys' fees is admitted but the necessity of bringing the action is denied.

Affirmatively, the defendants allege that 14 June, 1944, Eugene M. Berger was the agent of plaintiff; that said Berger, acting for plaintiff, agreed to the adjustment of rent "in the event it became unprofitable for the defendants to pay the rental referred to in plaintiff's complaint"; that the lease dated 7 August, 1944, was only a part of the agreement between the parties; that payment of the rental for the last year of the term was in fact unprofitable; that defendants are entitled to an adjustment of rent; that defendants had notified plaintiff of these facts and asked adjustment prior to the action commenced.

The answer does not allege in any way that there is a mistake or imperfection of the lease alleged in the complaint nor is the validity of the lease put in dispute. No extrinsic ambiguity or illegality or fraud is alleged. It simply avers that

the lease alleged in the complaint is only a part of the total agreement.

At the trial, over the objection of plaintiff, the defendants were allowed to introduce certain letters. The principal one of these was signed by Eugene M. Berger, the managing agent of plaintiff, and read in part as follows:

" . . . June 14, 1944.

"As I told you, if during the term of your lease any conditions take place which will make it commercially unprofitable for you to continue to pay that rental, I shall be very glad to sit down and discuss with you the changed conditions, with a view of helping you out.

"Within the next several days, I shall be glad to have the lease completed for your signature."

On the contention that this letter was a part of the lease agreement and was ambiguous, defendants were permitted to introduce a number of other letters and a large volume of parol evidence, going back several years, to explain the meaning of said quoted letter. This parol evidence included vital conversations with said negotiating agent Berger (who died shortly after execution of the lease) held prior to the signing of the lease. The one upon which greatest reliance is placed by defendants was during a long distance telephone call between Berger and E. C. Salyer at the time the lease (already signed by plaintiff) was received through the mail by Salyer. Salyer called attention to the fact that the lease did not include a provision for adjustment, as referred to in said quoted letter, and Berger replied:

"We've spent enough time on the dam lease—we would like to go ahead—the letter will protect you—we had worked together enough—I will protect you—go on farming and forget about it—sign it and send it back."

It also included evidence that in the year for which rent was not paid (1946-1947) Tulare Lake went dry and water from other sources came too late to make a profitable crop.

There was also admitted evidence concerning cropping customs in the area relating to the amount or share reasonably allocable to the lessor.

Section 1856 of the Code of Civil Procedure provides that:

"When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be between the parties and their representatives, or successors in interest, no evidence

of the terms of the agreement other than the contents of the writing, except in the following cases:

"1. Where a mistake or imperfection of the writing is put in issue by the pleadings;

"2. Where the validity of the agreement is the fact in dispute.

"But this section does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, as defined in section eighteen hundred and sixty, or to explain an extrinsic ambiguity, or to establish illegality or fraud. The term agreement includes deeds and wills, as well as contracts between parties."

Section 1860 of the Code of Civil Procedure provides:

"For the proper construction of an instrument, the circumstances under which it was made, including the situation of the subject of the instrument, and of the parties to it, may also be shown, so that the judge be placed in the position of those whose language he is to interpret."

Section 1625 of the Civil Code provides:

"The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument."

The proper application of section 1860 of the Code of Civil Procedure is explained in *United Iron Works* v. *Outer Harbor Dock & Wharf Co.*, 168 Cal. 81 [141 P. 917], where the court says, at page 84:

"This rule of evidence is invoked and employed only in cases where upon the face of the contract itself there is doubt and the evidence is used to dispel that doubt, not by showing that the parties meant something other *than* what they said but by showing what they meant *by* what they said."

In the case of *Cline* v. *Smith*, 96 Cal.App. 697 [274 P. 761], defendant had entered into a written contract with plaintiffs' principal. At the time the contract was submitted to defendant for his signature defendant objected to the 60-day cancellation clause in the contract. In response to this objection plaintiffs' principal wrote defendant a letter in which he said, in part:

". . . the writer will give you his word of honor that you need have no concern as to the termination of this contract without you are amply and amicably taken care of and I trust that this will allay your mind of any uneasiness with

regard to being disturbed so long as you represent us faithfully as you have in the past. . . .''

Speaking of this letter, the court said:

''It is contended that this letter and the formal contract must be construed together as one instrument, . . . It appears from the defendant's testimony that the letter was a part of the negotiations preceding or accompanying the execution of the contract. In the absence of fraud or mistake, it was inadmissible as evidence of the terms of the contract, which were neither uncertain nor ambiguous.''

The authorities cited by defendants, such as *Thoroman* v. *David*, 199 Cal. 386 [249 P. 513]; *Harrison* v. *McCormick*, 89 Cal. 327 [26 P. 830, 23 Am.St.Rep. 469]; *Kohl* v. *Lytle Creek Water & Improvement Co.*, 24 Cal.App.2d 353 [75 P.2d 71], and *Owsley* v. *Whelan Drug Co.*, 83 Cal.App.2d 454 [189 P.2d 50], do not support defendants' position that this case is properly one of the exceptions to the rule against varying the terms of a written contract by parol evidence.

In *Thoroman* v. *David*, 199 Cal. 386 [249 P. 513], the court said:

''If it imports upon its face to be a complete expression of the whole agreement,—that is, shows such language as imports a complete legal obligation,—it is to be presumed that the parties have introduced into it every material item and term; and parol evidence cannot be admitted to add another term to the agreement, *although the writing contains nothing whatever on the particular one to which the parol evidence is directed.*''

In *Harrison* v. *McCormick*, 89 Cal. 327 [26 P. 830, 23 Am. St.Rep. 469], the court quotes the time honored rule from Greenleaf on Evidence:

''When parties have deliberately put their engagement in writing in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively *presumed* that the whole engagement of the parties and the extent and manner of their undertaking was reduced to writing.''

The letter, even if it be considered a part of the whole agreement, is merely a promise to negotiate. Its terminology is not ambiguous. Numerous examples of this kind of agreement are to be found in the annals of business wherein one person assumes to rely on the moral integrity of another only to discover that the other's memory or understanding does not

respond concerning the event causing dispute. The court cannot make a new agreement for the parties.

In *Dillingham* v. *Dahlgren,* 52 Cal.App. 322 [198 P. 832], the court said:

"An agreement that parties will, in the future, make such contract as they may then agree upon amounts to nothing."

The lease of 7 August, 1944, was, on its face, full and complete and no fraud, mistake, imperfection, illegality or ambiguity was proved. We are of the opinion that the admission of parol. evidence and the letters was clearly error and should not have been permitted.

We are unable to agree with the defendants that the rule of estoppel applies in this case.

"The general rule is well settled that in order to furnish the basis of an estoppel, a representation or assurance must relate to some present or past fact or state of things, as distinguished from mere promises or expressions of opinion as to the future." (19 Am.Jur., p. 656.)

The cases of *Calistoga National Bank* v. *Calistoga Vineyard Co.,* 7 Cal.App.2d 65 [46 P.2d 246]; *Humboldt Sav. Bank* v. *McCleverty,* 161 Cal. 285 [119 P. 82]; and *Panno* v. *Russo,* 82 Cal.App.2d 408 [186 P.2d 452], do not vary this rule.

It is true that some cases of promissory estoppel and waiver appear to ameliorate or soften this rule, but we have been cited no case and we have been unable to find any case which in any way aids in the application of that doctrine to the case at bar.

The judgment is reversed and the cause is remanded for further proceedings not inconsistent with the views herein expressed. Each party will bear his own costs on this appeal.

Griffin, Acting P. J., and Mussell, J., concurred.

A petition for a rehearing was denied June 5, 1950, and defendants and appellants' petition for a hearing by the Supreme Court was denied July 6, 1950. Carter, J., voted for a hearing.