[S. F. No. 17933.   In Bank.   May 4, 1951.]

Estate of ANDREW WIELING, Deceased.   DAVID LUCH-
SINGER, as Administrator, etc., Appellant, v. ANDREW
WIELING, JR., as Executor, etc., Respondent.

Lorne M. Stanley and Douglas A. Pease for Appellant.

Carlson, Collins & Gordon, Frederick Bold, Jr., and Harold F. Sawallisch for Respondent.

TRAYNOR, J.—The administrator of the estate of Matilda Wieling appeals from a judgment of the probate court in an heirship proceeding determining that certain real property was the separate property of Andrew Wieling and not his and his wife's community property.

Andrew and Matilda Wieling were married in 1912. Matilda had five children by a previous marriage, four of whom survived her. Andrew Wieling, Jr., is the only child of the marriage between Andrew and Matilda and is the sole beneficiary of Andrew's will. Andrew died January 13, 1947, and Matilda May 9, 1947. During their marriage they acquired eleven parcels of real property. Title to seven of these parcels was taken in Andrew's name, and title to the remaining four in Matilda's name. The evidence is not clear whether the money used to purchase the property was the

community property or the separate property of either spouse. One of the lots in Matilda's name was a gift from two of her children.

On the basis of the foregoing evidence and applicable presumptions appellant contends that the property in Matilda's name was her separate property (Civ. Code, § 164), and that the property in Andrew's name was community property, on the ground that it was acquired by him after marriage other than by gift, bequest, devise, or descent. (Civ. Code, §§ 163, 164.) Respondent Andrew Wieling, Jr., executor of the estate of Andrew, contends that the property in Andrew's name became his separate property by virtue of an oral agreement between him and Matilda. It is therefore necessary to determine whether the evidence relating to the alleged oral agreement sustains the trial court's finding that the seven parcels in Andrew's name were his separate property.

Evidence of the agreement was presented by respondent, who testified that in 1925, when Matilda took title in her name to the tenth parcel of property, Andrew asked her, ''Why wasn't it good enough to keep all of it in the community?'' She said, ''I am going to have half of it in my name and half in your name, and we each have our own property, and there won't be any trouble about it.'' Respondent further testified: ''My mother [Matilda] was going to have half in her name, and my father [Andrew] was going to have half in his name, and she was going to build up until she got that much. . . . That plan was followed out right to a 'T'.'' At the time the agreement was made there were seven parcels in Andrew's name and two in Matilda's name. At that time Matilda took title to a third parcel, and the following year she took title to a fourth parcel. No additional property was acquired by either spouse, and at the time of their deaths in 1947 the appraised value of the property in Andrew's name was approximately twice that of the property in Matilda's name.

Appellant does not dispute the rule that by oral agreement husband and wife can change the character of their property (see *Huber* v. *Huber*, 27 Cal.2d 784, 789 [167 P.2d 708]; *Tomaier* v. *Tomaier*, 23 Cal.2d 754, 757-758 [146 P.2d 905]). He contends that the agreement was not carried into effect, since Matilda acquired only four parcels against Andrew's seven, and since the property in Andrew's name was worth approximately twice that in Matilda's. ■ There is no evi-

dence, however, that the relative values of the properties remained the same in the 21-year period between 1926, when the last parcel was acquired, and the deaths of the spouses; and since respondent testified that the agreement was carried out, the trial court could reasonably conclude that when Matilda acquired the last parcel in 1926 she had achieved an equal division.

Even if it be assumed, however, that Matilda did not succeed in acquiring property equivalent in value to that held by Andrew, it does not follow that the agreement was ineffective to make the property in his name his separate property. ▪ It could be inferred from the terms of the original agreement either that Matilda was not to lose her interest in the community property until she acquired separate property equivalent in value to that held by Andrew, or that the parties intended that the property held in the name of each should immediately become separate property and that any inequality should be rectified as additional property was acquired. After the agreement Matilda regarded the property in Andrew's name as his property. Although she collected rents on both his property and hers, she paid taxes and made repairs on her property only and made it clear to Andrew that he was solely responsible for the taxes on and maintenance of his property. From this evidence the trial court could reasonably conclude that from the time the agreement was made the parties intended that the property in the name of each spouse was his or her separate property.

▪ Appellant contends, however, that the evidence does not support the finding of the trial court because it consists almost wholly of the testimony of respondent, an interested witness, given after the parties to the contract were dead. The present action, however, is not on a claim or demand against the estate of a deceased person within the meaning of section 1880 of the Code of Civil Procedure (*Streeter* v. *Martinelli,* 65 Cal.App.2d 65, 71-72 [149 P.2d 725] ; *Bollinger* v. *Wright,* 143 Cal. 292, 296 [76 P. 1108]), and accordingly respondent was not incompetent to testify to events occurring before the deaths of the parties. ▪ It was for the trial court to determine what credit should be given his testimony (*Estate of Duncan,* 9 Cal.2d 207, 217 [70 P.2d 174]). ▪ The trial court accepted it as true, and it supports the finding. (Code Civ. Proc. § 1844.)

Finally, appellant contends that under the agreement Andrew gained an advantage over his wife, and that it must therefore be presumed that the agreement was the result of undue influence or fraud. (See Civ. Code §§ 158, 2235; *McKay* v. *McKay*, 184 Cal. 742, 746 [195 P. 385].) There is evidence, however, that Matilda was aware of the status of the property at the time she proposed the agreement. Andrew was willing to keep the property that stood in his name within the community. Since the agreement was conceived by her and not the result of any suggestion or act on the part of her husband, the trial court was justified in concluding that any presumption of undue influence or fraud had been rebutted. (*Smith* v. *Lombard*, 201 Cal. 518, 524-525 [258 P. 55].)

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Schauer, J., and Spence, J., concurred.