[Civ. No 17624.   First Dist., Div. One.   Apr. 9, 1958.]

ALBERT I. SILVER, Respondent, v. SECURITY JEW-
ELRY AND LOAN COMPANY (a Partnership) et al.,
Appellants.

Morris Oppenheim for Appellants.

Truman S. Waterman and Raymond H. Levy for Respondent.

BRAY, J.—Defendants appeal from a judgment awarding plaintiff $11,270 balance due on a contract of sale.

## QUESTION PRESENTED

Was the contract ambiguous, thereby permitting the admission of parol evidence to explain it?

## EVIDENCE

The controversy is over the question of whether or not one of two separate inventories of pledged goods was included in the contract price of $15,000. On August 9, 1954, plaintiff and defendants Neil Blumenthal and Carole R. Shostak* signed a contract under which plaintiff agreed to sell and said defendants agreed to buy plaintiff's jewelry, loan and pawnbroker business "together with all of the fixtures, furniture, furnishings, safes, and all other personal property, apparatus and paraphernalia . . ." As drawn, the contract included "stock in trade of watches and jewelry." Before signing this clause was stricken out. The contract as drawn also stated that being sold was "the sole possession of and all equities of the seller in the pledges of said business." Before signing, however, the following was added after the word "business": "save and except those pledges specifically set forth in separate agreement and schedule attached hereto." The contract further provided that the parties would "jointly take an inventory of all pledges existing and in effect as of August 31." It was agreed that the seller would continue to conduct the business until August 31 when the buyer would take over. Plaintiff executed a bill of sale dated August 31 which included in the property transferred "all equities of the seller in the pledges of said business." This was delivered at the time of the delivery of the three checks hereafter mentioned. The purchase price was $15,000, of which $5,000 was

---

*The court found that these two defendants were acting for themselves and as trustee for defendant Harry Blumenthal whom it included in the judgment. This finding is not challenged.

to be paid upon execution of the contract, the balance to be evidenced by a promissory note, payable in monthly installments of $250 commencing October 1. The note was never executed.

No inventory of pledges was attached to the contract. However, on the closing date, August 31, two inventories were prepared. Defendant Neil signed one copy of each and gave them to plaintiff. Plaintiff signed one copy of each, giving them to Neil. One was for pledges made prior to February 24, 1954, totalling $1,051.50. These pledges had expired technically but the interest thereon was being paid and had been pledged by special customers. The inventory stated that receipt of the listed pledges was acknowledged by the buyers and that they agreed to keep these pledges subject to redemption by the pledgors for at least one year. It also acknowledged receipt by the seller of $1,051.50 in consideration of which the seller assigned to buyer all his interest in said pledges or the equities therein. The second inventory was of the other pledges of the business. These totaled $7,055.50 and the inventory contained a receipt of the listed pledges ''as per terms of that certain Agreement,'' the contract above mentioned. It further contained acknowledgment of payment of $7,055.50 ''in full for and in consideration of the transfer and sale of all the equities in and to the hereinabove itemized and listed pledges.'' On the same day as the inventories were signed defendant Neil gave plaintiff three checks, one for $4,500 dated August 30 (admittedly this was the initial payment which the parties had agreed should be less than that provided in the contract), a second, dated August 31, for $7,055.50; on the back was typed ''All Equities in pledges''; a third, dated the same day, for $1,051.50; on its back was typed ''In full for pledges set forth in separate agreement.'' January 12, 1955, defendant Neil tendered plaintiff a check for $3,444.50, contending that to be the balance due under the contract and for the pledges listed in the first inventory above mentioned, claiming credit against the $15,000 contract price for the total of the three checks.* Plaintiff refused to accept the tender, claiming that the only payment on the contract price was the $4,500 and that the other sums were paid for the pledges which plaintiff claimed were excluded from the contract.

The court found that the contract was ambiguous as to whether or not the understanding of the parties was that the

---

*The excess over $15,000 was for alleged accrued interest.

pledges in the second inventory above mentioned were included in the contract price, and permitted oral evidence of the circumstances attendant upon the execution of the contract and the inventories.

Without detailing the evidence, plaintiff's evidence showed that all pledges were left out of the contract and not included in the contract price for the reason that it was not possible at the time of execution of the contract to know the amount of pledges there would be on August 31. A pledgor might redeem any time before the closing date and also plaintiff, as he was continuing the business until that date, might make additional pledge loans. Defendants' evidence was to the effect that only the pledges in the first inventory (pledges made prior to February 24, 1954) were excluded from the contract price, and that all other pledges were to be paid for by the $15,000. This conflict was resolved by the trial court and as the evidence was contradictory we are bound by the court's determination.

Defendants contend that the contract is not ambiguous. Under the law, whether a contract is ambiguous or uncertain so as to permit extrinsic evidence to show its terms is a question of law for the trial court to determine in the first instance. Its determination is not binding on this court. (*Brant* v. *California Dairies, Inc.* (1935), 4 Cal.2d 128, 133 [48 P.2d 13] ; *Barlow* v. *Frink* (1915), 171 Cal. 165, 172 [152 P. 290].) However, where it is ambiguous or uncertain and parol evidence is introduced in aid of interpretation, then the question of the meaning is one of fact. Particularly is this so when the evidence on the subject is conflicting. Then our province is merely to determine if there is substantial evidence to support the trial court's determination. (*Gibson* v. *De La Salle Institute* (1944), 66 Cal.App.2d 609, 621 [152 P.2d 774].) We agree with the trial court that the contract is ambiguous and uncertain. It provides that "those pledges specifically set forth in separate agreement and schedule attached hereto" are excepted. What does this mean when two agreements and schedules were made, neither of which was attached to the contract? Defendants concede that the pledges listed in the first schedule are excepted from the agreement. A part of the first schedule is a receipt acknowledging that $1,051.50 was received in full payment of the pledges therein listed, and a part of the second schedule is a receipt for the pledges listed therein "as per terms" of the contract, and for $7,055.50 in full payment for those pledges. Thus, this

schedule in effect says that the pledges listed on it are those which are excepted in the contract, and therefore are not to be paid for by the $15,000.

Taking the language of the contract to the effect that there was being sold "the sole possession of and all equities of the seller in the pledges of said business, save and except those pledges specifically set forth in separate agreement and schedule attached hereto," coupled with the fact that two schedules were made, neither attached to the contract, and that attached to the schedules were receipts of $1,051.50 in one, and $7,055.50 in the other in payment for the pledges listed in the particular schedule, it is obvious that there was an uncertainty as to what the agreement meant. As said in *Pacific Indem. Co.* v. *California Electric Works, Ltd.*, 29 Cal. App.2d 260, 273 [84 P.2d 313] : ". . . if there is any reasonable room for doubt as to what the contract means or as to what the exact words thereof apply to, then parol evidence is properly admitted." Defendants contend on the one hand that the agreement is clear and unambiguous and on the other hand that the evidence as to what was meant by the insertion of the "save and except" clause was admissible. They then contend that the trial court should have accepted the version given by their attorney who testified as to the circumstances under which the clause was inserted and what it meant, whereas the court accepted the version of plaintiff's attorney as to these. Needless to say, the resolving of this conflict was within the province of the trial court. ▮ After determining that the contract was ambiguous the trial court determined the true intent of the parties, using the method laid down in *Universal Sales Corp.* v. *California Press Mfg. Co.*, 20 Cal.2d 751, 761 [128 P.2d 665] : "As an aid in discovering the all-important element of intent of the parties to the contract, the trial court may look to the circumstances surrounding the making of the agreement [citations], including the object, nature and subject matter of the writing [citations], and the preliminary negotiations between the parties [citations], and thus place itself in the same situation in which the parties found themselves at the time of contracting." (See also *Berverdor, Inc.* v. *Salyer Farms,* 97 Cal.App.2d 459, 462-463 [218 P.2d 138].)

The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.