Valerie J. NOONIS a/k/a Valerie J. McAdams, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. EP–82–CA–145.

United States District Court,
W.D. Texas,
El Paso Division.

Oct. 31, 1983.

---

M. Richardson Lynn, Jr., San Diego, Cal., John K. Spencer, Sausalito, Cal., for plaintiff.

Allan B. Goldstein, Tax Atty., Dept. of Justice, Washington, D.C., Johnny D. Mixon, Cary L. Jennings, Attys., Tax Div., Dept. of Justice, Dallas, Tex., for defendant.

## MEMORANDUM OPINION AND ORDER

HUDSPETH, District Judge.

This is a civil action for the recovery of income taxes alleged to have been erroneously and illegally collected by the Internal Revenue Service under 28 U.S.C. § 1346(a)(1). The complaint was filed in the Southern District of California, 539 F.Supp. 404, but was transferred to this Court because the Plaintiff was domiciled in El Paso, Texas and in the Western District of Texas at the time suit was filed. The parties have stipulated to all the relevant facts, and there are no disputed issues

of fact. The parties have filed their briefs on the legal questions presented, and the case is now ripe for decision.

Plaintiff Valerie J. McAdams (formerly Valerie J. Noonis) married Ronald Noonis in California on February 19, 1971. In 1974, they purchased a home in the area of San Diego County known as Rancho Santa Fe. The deed conveying the residential property was dated February 14, 1974. Valerie and Ronald separated on January 1, 1975, and Valerie thereafter instituted legal proceedings in the State of California for the dissolution of their marriage. At the time of the separation on January 1, 1975, Valerie and Ronald agreed upon a division of their property. It was a part of that agreement that Valerie was to take the Rancho Santa Fe home as her separate property.

On December 8 and December 15, 1975, the Internal Revenue Service assessed deficiencies with respect to Ronald's personal income taxes for the years 1973 and 1974 in the respective amounts of $3,726.68 and $7,339.42. On February 16, 1976, the Internal Revenue Service assessed· deficiencies on Ronald's personal income taxes for the year 1970 in the amount of $30,349.14. However, the first Notice of Federal Tax Lien was not filed in the San Diego County Recorder's Office until April 15, 1976. That notice pertained to all property belonging to Ronald Noonis, and it related to taxes allegedly owed by Ronald for the years 1973 and 1974 in the sum of $11,066.10. A second Notice of Federal Tax Lien was recorded on May 25, 1976, which added to the earlier one the assessment for unpaid taxes for the year 1970. No tax lien was recorded with respect to Valerie until August 12, 1976, at which time a tax lien was filed against all property belonging to Valerie Noonis for taxes allegedly owed by Valerie for the years 1973 and 1974 in the sum of $12,024.15.

On April 14, 1976, Ronald Noonis had executed a quit claim deed with respect to the Rancho Santa Fe property in favor of his attorney, F.J. Bloomingdale, as Trustee. On May 3, 1976, Valerie executed a quit claim deed with respect to her' interest in the Rancho Santa Fe property to her attorney, Steven R. Striker, as Trustee. On May 14, 1976, Valerie and Ronald repeated their property settlement agreement of January 1, 1975 in the presence of their respective attorneys and a certified short-hand reporter and notary public, and the court reporter's notes were later transcribed (See Joint Exhibit 5 to the Stipulation of Facts and Documents filed herein on December 5, 1982).

A divorce decree dissolving the marriage of Valerie and Ronald Noonis was entered by the Superior Court of San Diego County, California, on August 18, 1977. In connection with the divorce decree and the. property settlement, Attorneys Bloomingdale and Striker, the "Trustees" of the Rancho Santa Fe real property, both executed quit claim deeds in favor of Valerie Noonis with respect to the property.

On April 21, 1978, the Internal Revenue Service recorded a Certificate of Release of Federal Tax Lien in favor of Valerie Noonis for the tax years 1973 and 1974. On May 10, 1978, a similar Certificate of Release of Federal Tax Lien was recorded with respect to Ronald Noonis for the tax years 1973 and 1974. Then, on August 3, 1978, the Internal Revenue Service recorded a Notice of Federal Tax Lien against the Rancho Santa Fe real estate with respect to taxes it claimed were owed by Valerie Noonis "as Nominee or Successor in Interest of Ronald R. Noonis" for the 1970 tax year in the sum of $30,349.14. In 1980, Valerie Noonis endeavored to sell the Rancho Santa Fe property. On February 4, 1980, the Internal Revenue Service caused a Notice of Federal Taxes Due to be served upon the Cal-West Escrow Company, the company which was handling the escrow for the sale, purporting to show unpaid taxes for the years 1970, 1973, and 1974 were owed by Valerie Noonis. When the escrow closed on February 27, 1980, the Internal Revenue Service collected from the proceeds of the escrow the sum of $40,294.69. This sum of money was purportedly to satisfy the tax liabilities of Ron-

ald Noonis for the years 1970, 1973, and 1974 in the following amounts: 1970 tax year—$37,478.45; 1973 tax year—$919.47; 1974 tax year—$1,896.77 (see Joint Exhibit No. 18). The Plaintiff, Valerie Noonis, timely filed her claims for refund of the money collected by the Internal Revenue Service from the sale of the Rancho Santa Fe property. By letter dated February 24, 1981, the Internal Revenue Service denied the Plaintiff's claim for refund. On May 27, 1981, the present action for refund of taxes was filed.[1]

Prior to the time this case was transferred from the Southern District of California, the Defendant moved to dismiss the refund claim on the grounds that the Plaintiff has no standing to bring this action. Although Judge Turrentine denied the Defendant's motion to dismiss on December 11, 1981, before the transfer of this action from the Southern District of California to the Western District of Texas, the Defendant has attempted to reurge the motion in this Court. That attempt must fail. Not only is Judge Turrentine's decision the "law of the case," his decision was unquestionably correct under the law of the Fifth Circuit, just as it was under the law of the Ninth Circuit.

█ The question presented by the Defendant's motion to dismiss is whether a party who pays the tax assessed against another upon the placement of a lien on property in which the party has an interest has standing to bring an action under 28 U.S.C. § 1346(a)(1) for refund of the tax. In *White v. Hopkins*, 51 F.2d 159 (5th Cir.1931), the Fifth Circuit held that he did. That holding has not been reversed nor seriously questioned in the Fifth Circuit for more than fifty years. It is well settled law. This is also the law in the Ninth Circuit. *United States v. Halton Tractor Co.*, 258 F.2d 612, 616–17 (9th Cir.1958); *Parsons v. Anglim*, 143 F.2d 534, 535–6 (9th Cir.1944); *David v. United States*, 551 F.Supp. 850, 854 (C.D.Cal.1982); *Adams v.*

*United States*, 380 F.Supp. 1033, 1034–5 (D.Mont.1974). See also *DeNiro v. United States*, 561 F.2d 653, 656 (6th Cir.1977). The Defendant's motion to dismiss should be denied. This Court must now proceed to determine the merits of the case.

Under the Internal Revenue Code, the amount of a taxpayer's unpaid federal taxes shall be a lien upon all property and rights to property, both real and personal, belonging to the taxpayer. 26 U.S.C. § 6321. The tax lien arises at the time the assessment is made by the Internal Revenue Service. 26 U.S.C. § 6322. In determining whether a piece of property "belongs to" a taxpayer within the meaning of Section 6321, the Court must first look to state law. *Aquilino v. United States*, 363 U.S. 509, 512–14, 80 S.Ct. 1277, 1279–80, 4 L.Ed.2d 1365 (1960); *Metropolitan Dade County v. United States*, 635 F.2d 512, 514 (5th Cir.1981). In the instant case, the assessments of tax liability against Ronald Noonis were made on December 8 and 15, 1975, and February 16, 1976. The first question to be answered in this case is whether under California law Ronald Noonis had any interest in the Rancho Santa Fe real estate on those dates.

█ Spouses may enter into agreements respecting property under California law. California Civil Code §§ 4802, 5103 (West 1970). Spouses even have the ability by oral agreement to transmute the character of property from community property to separate property or vice versa. See *Woods v. Security First National Bank*, 46 Cal.2d 697, 299 P.2d 657, 659 (Cal.1956); *In Re Wieling's Estate*, 37 Cal.2d 106, 230 P.2d 808, 810 (Cal.1951). Property settlements between spouses may be agreed to at the time the couple separates. See *Hill v. Hill*, 23 Cal.2d 82, 142 P.2d 417, 419 (Cal.1943); *Baxter v. Baxter*, 3 Cal.App.2d 676, 40 P.2d 536, 538 (Cal.App.1935). Once community property becomes the separate property of one spouse, the other spouse loses all interest in the property. Califor-

---

1. The original complaint filed in the Southern District of California also contained claims of wrongful levy under 26 U.S.C. § 7426(a). The court granted the Defendant's motion to dismiss those claims. That dismissal is apparently not contested by the parties at this time.

nia Civil Code § 5102 (West 1970); *Fallon v. American Trust Co.,* 176 Cal.App.2d 381, 1 Cal.Rptr. 386 (1962). Therefore, if the real estate in Rancho Santa Fe had become Valerie Noonis' separate property before the taxes were assessed, the tax liens could not properly attach to it. The Superior Court of San Diego County found that the property agreement between Ronald and Valerie was effective as of January 1, 1975. Defendant has offered no sound reason for rejecting that finding. Therefore, the tax liens did not attach to the Rancho Santa Fe property, and the Plaintiff is entitled to a full refund of the amount collected by the Internal Revenue Service.

The Defendant argues that, even though no assessment was made until December 8, 1975, the taxes were due prior to January 1, 1975, and that the community property continued to be burdened with community debts contracted during the marriage even though those debts were not reduced to liens. Defendant relies upon *Babb v. Schmidt,* 496 F.2d 957 (9th Cir. 1974), for its argument that, if state law makes the wife's share of community property available to the creditors of the husband, the husband may be said to have "property rights" in the real estate sufficient to allow the placing of a tax lien on it pursuant to 26 U.S.C. § 6321. The problem with that argument is that the Defendant has stipulated that the taxes were not collected from the Plaintiff as a transferee of Ronald Noonis (Stipulation of Facts and Documents, ¶ 21). In a case in which property has been conveyed from a taxpayer to a third party prior to the date of assessment and notice of demand for payment, the Government's alternative is to seek relief under the fraudulent conveyance laws of the particular state in which the property and the taxpayer are located. *United States v. Ressler,* 433 F.Supp. 459, 463 (S.D.Fla.1977), *aff'd* 576 F.2d 650 (5th Cir. 1978), *cert. denied* 440 U.S. 929, 99 S.Ct. 1265, 59 L.Ed.2d 485 (1979) and cases cited therein.

It is therefore ORDERED that the Plaintiff do have and recover of and from the Defendant judgment in the amount of $40,-294.69, plus interest thereon from February 27, 1980 to the date of judgment, plus interest thereafter at the legal rate from the date of judgment until paid, plus costs of suit.