Thomas A. WILKINSON, III, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. C–C–89–307–P.

United States District Court, W.D. North Carolina, Charlotte Division.

July 6, 1990.

Cecil M. Curtis, Charlotte, N.C., for plaintiff.

Clifford C. Marshall, Asst. U.S. Atty., Asheville, N.C., for defendant.

## ORDER

ROBERT D. POTTER, Chief Judge.

THIS MATTER is before the Court on Plaintiff Thomas A. Wilkinson, III's (hereinafter "Plaintiff") motion, filed February 14, 1990, for summary judgment. Defendant, The United States of America (hereinafter "Defendant"), filed a response on March 14, 1990 in opposition to the motion.

## I. PROCEDURAL BACKGROUND.

Plaintiff filed a complaint on July 12, 1989 in the Mecklenburg County (North Carolina) Superior Court. The complaint brings an action to quiet the title of property located at 1215 Carey Court, Charlotte, NC 28210 in which Plaintiff holds a quit claim deed. Defendant, through the Internal Revenue Service (hereinafter "IRS"), placed a lien on that property to satisfy the tax deficiency of Plaintiff's father, Thomas A. Wilkinson Jr. (hereinafter "Plaintiff's father"), who lives at the property.

On July 31, 1989, Defendant filed a notice of petition for removal of the action to United States District Court. Defendant filed an answer to the complaint on September 21, 1989. On November 14, 1989, this Court denied Plaintiff's motion to remand the action back to the Mecklenburg County Superior Court. 724 F.Supp. 1200. Thereafter, Plaintiff's motion for summary judgment and Defendant's response to the motion was filed.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT.

Rule 56 of the Federal Rules of Civil Procedure is the applicable Rule pertaining to motions for summary judgment. Rule 56(c) provides that judgment shall be rendered if the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is not a genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Where the only issue to be decided is an issue of law, summary judgment is appropriate. *See generally* 10A Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2725, at 79 (West 1983) (hereinafter "Federal Practice"). Naturally, if a genuine issue of material fact exists, the case is not ripe for summary judgment. *Id.* at 89.

The party moving for summary judgment has the burden of showing that no genuine issue of material fact exists, and that he is entitled to judgment as a matter of law. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Phoenix Savings & Loan, Inc. v. Aetna Casualty &*

*Surety Co.*, 381 F.2d 245 (4th Cir.1967). The burden is heavy, and any doubt as to the existence of a genuine issue of material fact will be resolved against the movant. *See Adickes*, 398 U.S. at 157, 90 S.Ct. at 1608. For example, because the movant carries the burden of persuading the court that his statement of the facts is accurate, if his evidentiary material creates an issue of credibility, the case must go to trial. *See Federal Practice*, at 129.

■ The movant may not rest on the mere allegations in the pleadings, but must present other materials such as affidavits or deposition testimony. *See Federal Practice*, at 43–44. All favorable inferences that can be drawn from the presented materials is construed in favor of the non-moving party. *See Cole v. Cole*, 633 F.2d 1083, 1090 (4th Cir.1980).

■ Although the non-moving party is not required to produce evidence, if the movant makes out a prima facie case that would entitle him to a directed verdict at trial, the burden shifts to the non-moving party to offer some competent evidence that shows there is a material issue of fact at issue. *See First National Bank of Arizona v. Cities Services Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968). The burden on the non-moving party is not a heavy one; he must only show specific facts, as opposed to general allegations, that present a genuine issue worthy of trial.

## III. FACTUAL BACKGROUND.

The Court's review of the record including the complaint, the answer, and the pleadings related to the motion presently before the Court demonstrates that there are few material issues in dispute. In Defendant's answer, Defendant admits the allegations contained in the complaint either in whole or substantial part in paragraphs 2 through 11, and 13 through 16. Defendant lacks sufficient knowledge as to the correctness of the allegations contained in paragraphs 1 and 12. The only paragraph Defendant completely denies is paragraph 17 which provides, "[T]here is no foundation in fact or law which supports the IRS in placing the lien on the Plaintiff's property". Moreover, in Defendant's reply to the motion for summary judgment, Defendant states, "[T]he United States does not dispute the sequence of events upon which plaintiff relies." *See Defendant's Response to Motion for Summary Judgment*, at 7.

The undisputed facts can be summarized as follows. After several years of financial trouble from his business, Plaintiff's father unsuccessfully attempted to commit suicide by the means of carbon monoxide poisoning. Thereafter, Plaintiff's father was left with severe brain damage. On June 23, 1987, Plaintiff's father was declared legally incompetent in the Mecklenburg County Superior Court.

On June 29, 1987, a mere six days after being declared incompetent, a general warranty deed was executed by Plaintiff's father which conveyed the Carey Court property solely to his wife, Ermine Wilkinson, thus breaking the tenancy by the entireties. Plaintiff's father signed the deed himself, while Plaintiff signed the deed for his mother pursuant to power of attorney authority. The deed was recorded the next day on June 30, 1987.

Ermine Wilkinson, having suffered with a lengthy cancer illness, died the next day, July 1, 1987. Plaintiff was the sole heir of his mother. Thus, the Carey Court property passed by will to Plaintiff. Plaintiff was named executor of his mother's estate on July 13, 1987.

On October 27, 1987, Edward G. Connette was appointed legal guardian for Plaintiff's father. Thereafter, Connette brought suit in state court on behalf of Plaintiff's father against Plaintiff to invalidate the June 29, 1987 conveyance of the Carey Court property from Plaintiff's father to Plaintiff's mother on the grounds that Plaintiff's father was legally incompetent at the time he executed the deed.

A settlement between Plaintiff and Connette, approved by the state court, was reached on April 19, 1988. Plaintiff received a quit claim deed in the Carey Court property which was filed with the Mecklen-

burg County Register of Deeds on April 19, 1988. It is undisputed that when the deed was filed, there was not a federal tax lien on the Carey Court property. Plaintiff's father received from Plaintiff $10,000 in cash to pay for legal fees, and the dismissal of counterclaim in the amount of $20,000 that Plaintiff asserted that he had paid out for his father's expenses and outstanding bills. Additionally, Plaintiff agreed to care for his father for the remainder of his life.

On July 11, 1988, the IRS filed a penalty assessment for back taxes against Plaintiff's father in the amount of $28,920.30 for 1984 through 1986 in connection with employment tax liabilities incurred by Plaintiff father's business. On November 29, 1988, the IRS filed the tax lien on the Carey Court property which is the subject of this action.

## IV. LEGAL ANALYSIS.

■ Plaintiff contends that summary judgment is appropriate because he obtained and filed the deed to the Carey property before the IRS placed a lien on the property. Because North Carolina is a "pure race" jurisdiction, Plaintiff contends that the first person to record has priority. Because Defendant did not put Plaintiff's father on notice of the deficiency until July 11, 1988 (almost three months after the state court-approved settlement) and did not place the lien on the property until November 29, 1988 (more than six months after Plaintiff acquired the property), Plaintiff argues that he is entitled to summary judgment.

Defendant has responded to Plaintiff's motion by raising a fraudulent conveyance defense. According to Defendant, a material issue of fact exists whether Plaintiff's father transferred the property for the purpose of placing the property out of the reach of creditors—the IRS being such a creditor. Defendant contends that such a conveyance is void under the applicable North Carolina statute. Thus, the lien is valid against the Carey Court property. Defendant argues that the record contains ample evidence in support of its position, making summary judgment inapplicable in this case. In the alternative, Defendant asserts that Plaintiff holds the property merely as the nominee of his father.

Defendant relies primarily on the deposition testimony of Plaintiff. Although the Court believes Defendant could have presented more evidentiary materials in support of its position, the Court is required by Rule 56 to give every reasonable inference to the non-moving party. Based on that standard, the Court believes Defendant has presented adequate evidentiary material to support its contention that a material issue of fact exists regarding whether Plaintiff's father made a fraudulent conveyance of the Carey Court property. The Court's rationale for that conclusion is stated below.

The lien in this case was placed on the Carey Court property pursuant to 26 U.S.C. § 6321. That statute provides in pertinent part:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount ... shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

Notice of the lien is required in order to validate the lien. See 26 U.S.C. § 6323. The place for filing a lien on real property is determined by state law. See 26 U.S.C. § 6323(f). North Carolina has designated the office of the register of deeds of the county where the property is located to be the location for the filing of notice of liens for internal revenue taxes payable to the United States. See N.C.Gen.Stat. § 44–65.

■ Whether a taxpayer has an interest in property to which a lien can attach is a matter of state law. See *Acquilino v. United States*, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960); *United States v. Bess*, 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1959); *United States v. Jones*, 631 F.Supp. 57, 59 (W.D.Mo.1986). Although the Court in unaware of a specific Fourth Circuit case addressing this issue, numerous other courts have held that state fraudulent conveyance law is controlling in determining whether a lien can attach to a certain piece of property. *See Carr Enter-*

*prises, Inc. v. United States*, 698 F.2d 952, 954 (8th Cir.1983); *United States v. Hickox*, 356 F.2d 969, 972 (5th Cir.1966); *United States v. Boucher*, 735 F.Supp. 987 (D.Col. 1990); *United States v. Clardson*, 1989 U.S.Dist. LEXIS 15367, at 5 (D.S.C. April 26, 1989); *United States v. Jones*, 631 F.Supp. 57, 59 (W.D.Mo.1986); *Noonis v. United States*, 576 F.Supp. 853 (W.D.Tex. 1983).

The applicable North Carolina statute concerning fraudulent conveyances is codified at N.C.Gen.Stat. § 39–15.[1] That statute renders conveyances with intent to defraud creditors void. In order to have a North Carolina deed voided as a fraudulent conveyance, the following must be shown:

> (1) that the transfers were voluntary, and defendants either (a) did not retain property sufficient to pay their debts then existing or (b) made the transfers with the intent to defraud creditors; or (2) that although the transfers were made upon valuable consideration, they were made with the intent to defraud creditors on the part of the grantor, which was participated in by the grantee or of which the grantee had notice.

*Wurlitzer Distributing Corp. v. Schofield*, 44 N.C.App. 520, 261 S.E.2d 688, 691–92 (1980); *see also North Carolina National Bank v. Evans*, 296 N.C. 374, 250 S.E.2d 231, 234 (1979); *Aman v. Walker*, 165 N.C. 224, 81 S.E. 162, 164 (1914); *Nytco Leasing, Inc. v. Southeastern Motels*, 40 N.C. App. 120, 252 S.E.2d 826, 831 (1979).

Courts considering the question of fraudulent transfers have found that determination to be of a factual nature. *Carr Enterprises, Inc.*, 698 F.2d at 954; *United States v. Flores*, 535 F.2d 135, 139 (1st Cir.1976); *Loving Saviour Church v. United States*, 556 F.Supp. 688, 690 (D.S.D.1983), *aff'd*, 728 F.2d 1085 (8th Cir.1986). The determination of whether the transfer was fraudulent under N.C.Gen.Stat. § 39–15 is a matter of fact rather than a matter of law. *See Schofield*, 261 S.E.2d at 692. The fact finder must determine whether the consideration provided for the transfer was adequate[2], whether the transfer was made with the intent to defraud creditors, or in the case of transfer made with valuable consideration, whether that transfer was made with intent to defraud creditors.

In the case at hand, Defendant has introduced evidence that indicates Plaintiff's father had numerous creditors at the time of the transfer of the Carey Court property. *See Transcript of Deposition of Thomas A. Wilkinson, III*, January 5, 1990, at 11

---

1. For avoiding and abolishing feigned, covinous and fraudulent gifts, grants, alienations, *conveyances,* bonds, suits, judgments and executions, as well of lands and tenements as of goods and chattels, *which may be contrived and devised of fraud, to the purpose and intent to delay, hinder and defraud creditors and others of their just and lawful actions and debts,* every gift, grant, alienation, bargain and conveyance of lands, tenements and hereditaments, goods and chattels, by writing or otherwise, and every bond, suit, judgment and execution, at any time had or made, to or for any intent or purpose last before declared and expressed, *shall be deemed and taken* (only as against that person, his heirs, executors, administrators and assigns, whose actions, debts, accounts, damages, penalties and forfeitures, by such covinous or fraudulent devices and practices aforesaid, are, shall, or might be in anywise disturbed, hindered, delayed or defrauded) *to be utterly void and of no effect;* any pretense, color, feigned consideration, expressing of use, or any other matter or thing to the contrary notwithstanding; and in all actions by creditors to set aside gifts, grants, alienations and conveyances of lands and tenements and judgments purporting to be liens on the same on the ground that such gifts, grants, alienations, conveyances and judgments are feigned, covinous and fraudulent hereunder, it shall be no defense to the action to allege and prove that the lands and tenements alleged to be so conveyed or encumbered do not exceed in value the homestead allowed by law as an exemption: Provided, that nothing in this section shall be construed to authorize the sale under execution or other final process, obtained on any debt during the continuance of the homestead, of any interest in such land as may be exempt as a homestead (emphasis added).

2. A valuable consideration in the law of fraudulent conveyances is not the same as a valuable consideration in the law of contracts. *See Evans*, 250 S.E.2d at 234. For purposes of fraudulent conveyance law, a conveyance is deemed to be voluntary "when the purchaser does not pay a reasonably fair price such as would indicate unfair dealing and be suggestive of fraud". *Id.* (citing *Gas Co. v. Leggett*, 273 N.C. 547, 161 S.E.2d 23 (1968)). The determination of a "reasonably fair price" is obviously a question of fact.

(hereinafter "Plaintiff's Dep."). Moreover, Plaintiff was aware that his father owed money to the IRS. *Plaintiff's Dep.* at 42. In fact, Plaintiff contacted the IRS after the business was shut down in order to attempt to reach some sort of settlement regarding the monies owed to the IRS. *Plaintiff's Dep.* at 51. Plaintiff was also aware that obligations owed to the IRS take precedent over other obligations. *Plaintiff's Dep.* at 54. Therefore, the Court believes that there is a material issue of fact in dispute regarding whether Plaintiff entered into the settlement agreement with his father's guardian in order to avoid creditors; namely the IRS. *See also Plaintiff's Dep.* at 20–21 (indicating Plaintiff's father was rendered insolvent following transfer of Carey Court property).

The Court also believes a material issue of fact exists concerning whether adequate consideration was paid for the property. Plaintiff indicated the property was worth at least $57,000, subject to a small mortgage. *Plaintiff's Dep.* at 15. In return for receiving the property, Plaintiff agreed to pay $10,000 to Connette on behalf of Plaintiff's father, to drop two $10,000 claims against his father, and to support him for the rest of his life. *Plaintiff's Dep.* at 31–34. Whether or not this amount was a reasonable sum is a question for the fact finder.

In summary, the Court believes that a material issue of fact exists regarding whether the transfer was fraudulent. Accordingly, summary judgment is not appropriate. Nonetheless, the Court believes that there are few issues in dispute and would urge the parties to enter into stipulations regarding those undisputed factual issues. The Court believes the only material issue left for disposition concerns whether the conveyance was fraudulent. Because the Court believes a material issue of fact exists regarding the fraudulent conveyance defense raised by Defendant, the Court does not believe it is necessary to address Defendant's alternative position that Plaintiff holds the property merely as the nominee of his father.

## V. ORDER.

NOW, THEREFORE, IT IS ORDERED that Plaintiff's motion for summary judgment be, and hereby is, DENIED.