[No. A132327. First Dist., Div. Four. Apr. 10, 2012.]

LITKE O'FARRELL, LLC, Plaintiff and Respondent, v.
MARCIA TIPTON, Defendant and Appellant.

1180

COUNSEL

Chiles and Prochnow and Kenneth H. Prochnow for Defendant and Appellant.

Rossi, Hamerslough, Reischl & Chuck, David Hamerslough and Richard B. Gullen for Plaintiff and Respondent.

OPINION

REARDON, Acting P. J.—Nondebtor spouse Marcia Tipton appeals from a postjudgment order granting respondent Litke O'Farrell, LLC (Litke), a charging order against what she asserts has become her separate property interest in certain partnerships and limited liability companies that were divided pursuant to a marital settlement agreement (MSA). The charging order was designed to satisfy a judgment entered against her husband, Richard Tipton. The trial court concluded that under Family Code[1] section 916, subdivision (a) (section 916(a)), her interest in such property did not become shielded from creditors until entry of judgment of dissolution or separation, which occurred *after* Litke's charging liens in this case attached. We agree with appellant that upon entering into an enforceable MSA, the parties accomplished a division of their community estate such that the community property awarded to her became her separate property prior to attachment of the charging liens. Accordingly, we reverse the judgment.

---

[1] Unless otherwise noted, all statutory references are to the Family Code.

## I. BACKGROUND

In August 2009, the trial court entered judgment for $523,979.28 in favor of Litke and against Richard Tipton and others. We affirmed the judgment. (*Litke O'Farrell, LLC v. Tipton* (Oct. 29, 2010, A126563) [nonpub. opn.].)

On January 18, 2011, Litke commenced serving a motion to charge the interests of Richard Tipton and others in certain partnerships and limited liability companies. Actual service on Richard Tipton was effected January 24, 2011, the same date Litke filed the motion in court. Meanwhile, on January 21, 2011, notice was given that an action for dissolution of the Tiptons' marriage was filed December 15, 2010, and that the parties had executed an MSA with a signature and the effective date of January 18, 2011. The MSA divided the community property assets in question, confirming half to Marcia Tipton and half to Richard Tipton as their sole and separate property, while saddling Richard Tipton with sole responsibility for the judgment debt owed to Litke. The MSA also provided that at the time judgment of dissolution is obtained, the original of the MSA shall be attached to the stipulated judgment and the court shall be requested to (1) approve the agreement as fair and equitable; (2) order the parties to comply with its executory provisions; and (3) incorporate the MSA into the judgment of dissolution. Nevertheless, the MSA also stated that it would be independently valid and binding *whether or not incorporated into a final judgment of dissolution.*

On January 28, 2011, Litke served a second motion on Marcia Tipton and Richard Tipton, specifically charging the interests of Marcia Tipton in the various partnerships and limited liability companies subject to the first motion, and also charging both parties' interests in a newly disclosed entity.

The court entered judgment of dissolution incorporating the MSA on January 31, 2011.

Marcia Tipton opposed the motion for a charging order against her property. The trial court ruled in favor of Litke's charging motion; this appeal followed.

## II. DISCUSSION

Appellant is adamant that the division of property occurred when the parties signed the MSA and it became effective, not when the court entered judgment of dissolution. We agree.

In general, the community estate is liable for debts incurred by either spouse before or during marriage and prior to dissolution of marriage or legal

separation. (§§ 902, 910; *Lezine v. Security Pacific Fin. Services, Inc.* (1996) 14 Cal.4th 56, 63–64 [58 Cal.Rptr.2d 76, 925 P.2d 1002].)

Section 916(a)(2) in turn provides: "(a) . . . [A]fter division of community and quasi-community property pursuant to Division 7 (commencing with Section 2500): [¶] . . . [¶] (2) The separate property owned by a married person at the time of the division and the property received by the person in the division is not liable for a debt incurred by the person's spouse before or during marriage, and the person is not personally liable for the debt, unless the debt was assigned for payment by the person in the division of the property. Nothing in this paragraph affects the liability of property for the satisfaction of a lien on the property."

■ Under the plain terms of the statute, property received by a nondebtor spouse escapes liability for the debtor spouse's debt only "after division" of the community property. The question thus becomes: When does division occur?

Prior to enactment of the predecessor to section 916, a spouse who received community property after dissolution of marriage was still liable for community debts incurred by the other spouse during the marriage. (*Mejia v. Reed* (2003) 31 Cal.4th 657, 665 [3 Cal.Rptr.3d 390, 74 P.3d 166].) That changed in 1984, at which time the Legislature enacted Civil Code former section 5120.160, providing in part "that, upon the dissolution of the marriage, 'the property received by [a married] person in the division is not liable for a debt incurred by the person's spouse before or during marriage, and the person is not personally liable for the debt, unless the debt was assigned for payment by the person in the division of the property.' [Citation.] When the Family Code was enacted in 1992, Civil Code section 5120.160 became Family Code section 916." (*Mejia v. Reed, supra*, at p. 665.)

The first sentence of section 916(a) leads us to section 2550, which states: "*Except upon the written agreement of the parties*, or on oral stipulation of the parties in open court, or as otherwise provided in this division, in a proceeding for dissolution of marriage or for legal separation of the parties, the court shall, either in its judgment of dissolution of the marriage, in its judgment of legal separation of the parties, or at a later time if it expressly reserves jurisdiction to make such a property division, divide the community estate of the parties equally." (Italics added.)

Litke argues that the division of property under sections 916 and 2550 does not occur prior to judgment. It maintains that the "[e]xcept upon the written agreement of the parties" language of section 2550 simply means that the parties can agree to divide the community estate unequally, but that "does not

change the fact that it is the court that approves and effectuates a division by entering a judgment dividing the property." Litke cites *Mejia v. Reed, supra,* 31 Cal.4th 657 for this proposition,[2] but what the opinion says simply is this: "Whenever, as in this case, the parties agree upon the property division, no law requires them to divide the property equally, and the court does not scrutinize the MSA to ensure that it sets out an equal division." (31 Cal.4th at p. 666.) Thus the question remains: Is it the court or the parties that divide the community estate under section 2550 in the face of a written MSA?

■ Our fundamental task in construing statutes is to divine the Legislature's intent so as to carry out the purpose of the law. Undertaking this task, we do not construe statutes in isolation, but instead read every statute with reference to the entire scheme of law to which it belongs so that the whole is harmonized and retains effectiveness. (*In re Marriage of Harris* (2004) 34 Cal.4th 210, 222 [17 Cal.Rptr.3d 842, 96 P.3d 141].)

■ As a general matter, our Family Code empowers a husband and wife to alter their property rights by a marital property agreement, which in turn can be recorded such that the recorded instrument *has the same effect as a recorded grant deed.* (§§ 1500, 1502, subd. (b).) The husband and wife thus can contract with each other *at any time* regarding property and, in a written agreement to separate, may provide for child and spousal support during separation or upon dissolution of marriage. (§§ 1620, 3580.) In the absence of fraud or other invalidity, property provisions of an MSA are valid and binding

---

[2] In support of its position, Litke also refers us to the California Law Revision Commission's comment to section 916: "Section 916 continues former Civil Code Section 5120.160 without substantive change. . . . [¶] Section 916 prescribes rules of liability of former community, quasi-community, or community estate property and former separate property following a division of the property pursuant to a court judgment of separation, dissolution, or later division." (Cal. Law Revision Com. com., 29C West's Ann. Fam. Code (2004 ed.) foll. § 916, p. 510.)

While this comment suggests that property division occurs pursuant to a judgment, it does not disavow that property division can also occur pursuant to a contractual agreement. In many cases, the MSA is incorporated into the judgment, but that need not be the case. As explained in a family law treatise: "The manner in which *and even whether* the agreement is presented to the court with the judgment depends on the relationship the parties intend between the agreement and the judgment and on local court rules." (Practice Under the Cal. Family Code (Cont.Ed.Bar 2011) Uncontested Proceedings, § 14.41, p. 822, italics added.) In the present case, the MSA was incorporated into the judgment, but it had independent validity prior to entry of judgment.

Litke also calls our attention to this language in a well-regarded treatise: "[U]nless *the nondebtor spouse was assigned the debt* by the property division judgment, he or she is *not personally liable* thereafter for the other spouse's debts incurred before or during marriage. [Fam.C. §916(a)(2) & (3)]" (Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2011) ¶ 8:778, p. 8-192.1 (rev. # 1, 2011).) Again, while this statement emphasizes property division pursuant to a judgment, it does not disavow that division can also occur pursuant to a valid MSA.

on the court. (*Adams v. Adams* (1947) 29 Cal.2d 621, 624 [177 P.2d 265].)
Indeed, the court does not have a role in approving or disapproving property
divisions agreed to by the parties. Its only role is to accept the agreement and,
if requested, incorporate the disposition into the judgment. (*In re Marriage of
Cream* (1993) 13 Cal.App.4th 81, 91 [16 Cal.Rptr.2d 575].) Thus, court
approval in a dissolution proceeding is not a prerequisite to the enforcement
of an MSA in an independent action, unless the agreement requires such
approval. (See *Sanborn v. Sanborn* (1934) 3 Cal.App.2d 437, 441–442
[39 P.2d 830]; Blair et al., California Marital Settlement and Other Family
Law Agreements (Cont.Ed.Bar 3d ed. 2011) The Agreement in Its Legal
Context, § 3.8, p. 82.)

■ Considering section 2550 in light of the above Family Code provi-
sions, it is clear that the parties can divide community property pursuant to a
written agreement, and that such agreement is enforceable without court
approval. Hence, under section 2550, the court divides the community estate
equally in its judgment of dissolution, legal separation or at a later time,
unless the parties divide the estate pursuant to a written agreement or oral
stipulation in open court.

Here, the Tipton dissolution proceeded as an uncontested matter, with the
parties agreeing on the disposition of property rights and obligations pursuant
to a written MSA which, by its terms, became effective on the date of signing
and was independently valid and binding regardless of whether it was
incorporated into a final judgment of dissolution. Prior to incorporation into
the judgment, the MSA was an enforceable contract that effected a division of
community property interests into separate property interests. Because the
MSA divided the community estate prior to Litke's motion to charge interests
in certain assets subject to that division, Litke could not satisfy its judgment
against Richard Tipton by resort to Marcia Tipton's interest in those assets.

Our conclusion is bolstered by an unlikely source: a federal district court
opinion rendered nearly 30 years ago. *Noonis v. United States* (W.D.Tex.
1983) 576 F.Supp. 853 (*Noonis*)[3] involved an action for recovery of income
taxes purportedly erroneously collected by the Internal Revenue Service.
Upon separation, the husband and wife entered into a property agreement
effective January 1, 1975, in which the wife took real property as her separate
property. Tax deficiencies with respect to the husband's personal income
taxes were assessed against the real property after the effective date of the
property agreement and prior to entry of the decree dissolving the marriage.
The district court held that the wife was entitled to a refund of taxes collected

[3] Initially filed in California, the case was transferred to the Western District of Texas
because the wife was domiciled there at the time suit was initiated. (*Noonis, supra*, 576 F.Supp.
at p. 854.)

because the real property had become her separate property upon the effective date of the property agreement *before* the taxes were assessed, and thus the tax liens could not properly attach to it. (*Id.* at p. 857.) The court's reasoning is sound. Moreover, as a policy matter it would be unfair to require parties to an MSA to await entry of a judgment on some uncertain, future date in order to effect the disposition of property to which they have already agreed.

■ Like *Noonis*, in the case at hand, the MSA transmuted Marcia Tipton's community property interest in the properties in question into separate property prior to the time Litke pursued its motion for charging orders against the property. Charging liens therefore did not attach, and Litke was not entitled, to orders charging Marcia Tipton's confirmed separate property.

## III. DISPOSITION

The judgment is reversed. Litke to bear costs on appeal.

Rivera, J., and Sepulveda, J.,* concurred.

---

*Retired Associate Justice of the Court of Appeal, First Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.