Filed 4/8/26  Goldstein v. Ramachandran CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JEFF GOLDSTEIN, Plaintiff and Appellant, v. NISHANT RAMACHANDRAN, Defendant; KATY RAMACHANDRAN, Third Party Claimant and Respondent. | B344324 Los Angeles County Super. Ct. No. 19STCV32837 |

APPEAL from an order of the Superior Court of Los Angeles County, Stephen P. Pfahler, Judge. Affirmed.

Zohar Law Firm and Daniel Yehuda Zohar for Plaintiff and Appellant.

Kahana & Feld, Sharon Oh-Kubisch and Michelle Martin for Third Party Claimant and Respondent.

_____

This is a dispute between two individuals who were each victimized by Nishant Ramachandran.

Plaintiff and Appellant Jeff Goldstein worked for Nishant for years and had to resort to litigation to seek full compensation for that work. He obtained a judgment against Nishant in an amount exceeding $2 million.

Third Party Claimant and respondent Katy Ramachandran was married to Nishant for several years and shares three children with him. Katy suffered abuse by Nishant for many years before she fled the family home with her children to a domestic violence shelter. In subsequent divorce proceedings, Katy and Nishant agreed Katy was entitled to exclusive ownership of two parcels of real property in Redondo Beach that had been titled in both their names.

At issue here is the extent to which the properties are subject to enforcement of Goldstein's judgment against Nishant. We agree with the trial court that the properties are not subject to such enforcement, albeit for different reasons than relied upon by the trial court.

As further explained below, Katy and Nishant's agreement with respect to ownership of the properties was effective before Goldstein recorded the abstract of his judgment against Nishant. Accordingly, Nishant had no interest in the properties to which Goldstein's judgment lien could attach. As such, Goldstein had no right to enforce against the properties.

We therefore affirm the trial court's order denying Goldstein's applications for the sale of the properties.

## BACKGROUND

Goldstein began working with Nishant on Nishant's technology ventures in 2000. Nishant did not pay Goldstein all

amounts due for his work. In 2015, Nishant acknowledged in writing that he owed Goldstein annual compensation, dating back to the start of their relationship, ranging from $120,000 to $250,000 per year.

Katy and Nishant married in 2009. In 2011, they purchased a house located at 2104 Plant Avenue in Redondo Beach. Record title to this property was taken in the names of "Nishant Ramachandran and Katy Ramachandran, Husband and Wife as Community Property."

According to Katy's declaration, she used separate property she had accumulated prior to marriage to purchase a neighboring property, 2106 Plant Avenue in Redondo Beach, in 2012. Nevertheless, record title to this property was taken in the names of "Nishant Ramachandran and Katy Ramachandran."

In 2016, Katy and Nishant executed a "Property Agreement." It recites that 2106 Plant was acquired using funds that were Katy's separate property, the parties always intended it would be her separate property, and rental revenue from the property exceeded its debt service and maintenance costs. The agreement identified, among other assets, 2106 Plant as Katy's separate property. Because 2104 Plant was not assigned to either spouse as separate property, the agreement treated it as "joint marital property." The agreement was never recorded and no change to 2106 Plant's record title was made pursuant to the agreement.

In 2018, Katy filed a petition for dissolution of her marriage to Nishant.

In 2019, Goldstein commenced his action against Nishant to recover unpaid compensation.

In February 2023, Katy and Nishant executed a marital settlement agreement (MSA) entitled "Stipulated Judgment of Dissolution of Marriage." As relevant here, the MSA provides that both the properties, "whether separate or community [assets], are awarded and confirmed to Katy as Katy's sole and separate property, with the right of immediate possession, free and clear of any claim, right, title or interest of Nishant."

In April 2023, Goldstein obtained a judgment against Nishant in the amount of $2,269,250 plus $15,359.55 in costs. He caused an abstract of the trial court's judgment to be recorded with the Los Angeles County Registrar-Recorder's/County Clerk Office on June 23, 2023.

In August 2023, the family court entered a judgment of dissolution of Katy and Nishant's marriage, which included the MSA.

In January 2024, Goldstein filed ex parte motions for orders directing the sales of the properties. The trial court issued orders to show cause pursuant to Code of Civil Procedure section 704.770, subdivision (a), which were both set for hearing on March 15, 2024.

On March 1, 2024, Nishant filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code in the United States Bankruptcy Court for the Central District of California. Nishant claimed an interest in both properties in his bankruptcy case. He also filed a homestead declaration under Code of Civil Procedure section 704.910 with respect to 2104 Plant.

In April 2024, Goldstein moved for relief from the automatic stay (11 U.S.C. § 362) in Nishant's bankruptcy case to permit Goldstein to proceed with enforcement against the

4

properties. In response to Goldstein's motion, Katy filed a declaration, refuting Nishant's claims to any interest in the properties. On May 1, 2024, after what he termed "a diligent inquiry into [Nishant's] financial affairs," the chapter 7 trustee filed a notice of his intention to abandon any interest Nishant may have had in the properties. On May 10, 2024, the bankruptcy court granted Goldstein his requested stay relief. On May 20, 2024, Nishant quitclaimed his interests in the properties via interspousal transfer deed to Katy. Katy caused the deeds to be recorded in the Los Angeles County Registrar-Recorder's/County Clerk two days later.

With the bankruptcy stay lifted, proceedings in the trial court resumed. Katy appeared and opposed Goldstein's enforcement efforts. In November 2024, she filed an opposition and declaration in support of her position that the properties were her separate property and thus immune to Goldstein's enforcement. The evidence she submitted was largely duplicative of what she had filed months earlier in response to Goldstein's stay relief motion in the bankruptcy court.

Goldstein filed a reply arguing the properties were community property insofar as a third party creditor was concerned when his judgment lien attached, such that he was entitled to proceed with their sale. He also accused Nishant of fraudulently transferring the properties to Katy but did not develop the argument, factually or legally.

The trial court heard the matter on December 5, 2024, and took it under submission. Four days later, it entered an order refusing Goldstein's request to proceed with the sale of the properties. The court concluded the family court's August 2023 dissolution judgment barred Goldstein's enforcement because

5

"the Family Court . . . clearly intended for the properties to be [Katy's separate property and] not . . . be used to satisfy [Goldstein's] Judgment against [Nishant] in the instant action." It rejected Goldstein's fraudulent transfer claims as undeveloped and, alternatively barred on the basis that "a Dissolution Judgment from a family court is clearly not a fraudulent transfer."

Goldstein timely appealed.

## DISCUSSION

### I. Standard of Review

As the trial court's decision rested on no disputed factual issues, our review is de novo. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799 ["When the decisive facts are undisputed, we are confronted with a question of law and are not bound by the findings of the trial court."].)

### II. Applicable Law

The resolution of this appeal involves several provisions of the Enforcement of Judgments Law (Code Civ. Proc., § 680.010 et seq.) and the Family Code.

Code of Civil Procedure section 695.020, subdivision (a) provides that "[c]ommunity property is subject to enforcement of a money judgment as provided in the Family Code." (*Ibid.*)

In turn, Family Code section 910, subdivision (a) provides that, subject only to express statutory exceptions, "the community estate is liable for a debt incurred by either spouse before or during the marriage, regardless of which spouse has the management and control of the property and regardless of whether one or both spouses are parties to the debt or to a judgment for the debt." (*Ibid.*) In contrast, "[t]he separate

property of a married person is not liable for a debt incurred by the person's spouse before or during marriage." (§ 913, subd. (b)(1).)

In general, property acquired by a married person during marriage while domiciled in California is community property—i.e., it is part of the community estate. (Fam. Code, § 760.) Separate property of a married person includes "[a]ll property owned by the person before marriage." (§ 770, subd. (a)(1).) Even though acquired during marriage, "[p]roperty purchased with [a married person's] separate property funds is [such person's] separate property." (*Mix v. Mix* (1975) 14 Cal.3d 604, 610.)

Community property may lose its community character by transmutation—an agreement by both spouses making community property the separate property of one. (Fam. Code, § 850, subd. (a).) Community property may also be divided in the context of a marriage dissolution. In such a scenario, community property may be divided either by the family court or by agreement of the parties. (§ 2550; *Litke O'Farrell, LLC v. Tipton* (2012) 204 Cal.App.4th 1178, 1184 (*Litke*).) So too may liability for community debts. (§§ 2550, 2622, subd. (a); see also § 916, subd. (a)(2); *Mejia v. Reed* (2003) 31 Cal.4th 657, 665–666; *Litke*, at pp. 1181–1182.)

The effects of division of community property and community debts are set forth in Family Code section 916. Most relevant here is subdivision (a)(2), which provides: "The separate property owned by a married person at the time of the division and the property received by the person in the division is not liable for a debt incurred by the person's spouse before or during marriage, and the person is not personally liable for the debt, unless the debt was assigned for payment by the person in the

7

division of the property. Nothing in this paragraph affects the liability of property for the satisfaction of a lien on the property."

The holder of a money judgment may obtain a judgment lien in real property subject to enforcement by recording an abstract of judgment in the county where the real property is located. (Code Civ. Proc., § 697.310, subd. (a).) Such a lien "attaches to all interests in real property in the county where the lien is created . . . that are subject to enforcement of the money judgment against the judgment debtor . . . at the time the lien was created . . . ." (*Ibid.*) Importantly, " ' "the lien of a judgment does not attach to a naked title, but only to the judgment debtor's interest in the real estate; and if he has no interest, though possessing the naked title, then no lien attaches. [Citation.] Thus a creditor who attaches property for his debt obtains a lien only upon the title or interest which the debtor has in the property at the time of the levy, and if at that time all title and interest has [*sic*] passed from him to a third person, the creditor gets nothing by the levy." ' " (*Barisich v. Lewis* (1990) 226 Cal.App.3d 12, 19.)

Once a judgment lien attaches to property, it is not affected by any subsequent transfer or encumbrance of the property, and "the money judgment may be enforced against the property in the same manner and to the same extent as if it had not been transferred or encumbered." (Code Civ. Proc., § 695.070, subd. (a); see also § 697.390.) This is true even where the transfer is effected by a family court judgment awarding to a nondebtor spouse community property subject to a lien resulting from a judgment against the debtor spouse. (*Lezine v. Security Pacific Fin. Services, Inc.* (1996) 14 Cal.4th 56, 65 (*Lezine*); see also Fam. Code, § 916, subd. (a)(2).)

### III.   Analysis

Applying the foregoing principles to the present case, the dispositive question is as follows: As of June 23, 2023, when Goldstein recorded the abstract of his judgment against Nishant, did Nishant hold an interest in the properties beyond bare record title? To the extent the answer is "no," Goldstein's lien did not attach to the properties and is of no effect. To the extent the answer is "yes," Goldstein holds a valid judgment lien in such interest, and such lien is enforceable as provided in the Enforcement of Judgments Law. For reasons different from those stated by the trial court, the answer is "no."[1] (See *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 [" '[A] ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion.' "].)

---

[1]   Because we conclude Katy properly prevailed on the merits, we need not address her argument that Goldstein failed to adequately raise in the trial court his arguments concerning the enforceability of his lien.

However, to the extent Goldstein separately argues the MSA constituted a fraudulent transfer, we agree with the trial court he failed to properly raise this fact-dependent issue below. It is therefore forfeited. (*Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 698 [" 'Ordinarily the failure to preserve a point below constitutes a [forfeiture] of the point.' "].)

## A. The Trial Court Erroneously Determined the Family Court's Dissolution Judgment Affected Goldstein's Rights as a Lien Creditor

The trial court concluded the properties were Katy's separate property based on a judicial act of the family court— entry of the "Dissolution Judgment" manifesting the family court's "clear[] inten[t]" that "the properties . . . be [Katy's separate property and] not . . . be used to satisfy [Goldstein's] Judgment."

There is no question that, if they were not before, the properties were Katy's separate property after the family court entered the dissolution judgment. (See Fam. Code, § 2010, subd. (e) [family court has "jurisdiction to inquire into and render any judgment and make orders that are appropriate concerning . . . . [¶] . . . [t]he settlement of the property rights of the parties"]; *Buic v. Buic* (1992) 5 Cal.App.4th 1600, 1603–1604 [property award in dissolution judgment effects transfer of interest even without transfer of record title].) However, this does not resolve the extent of Nishant's interest in the properties as of June 23, 2023, to which Goldstein's judgment lien might have attached. If Nishant's interest were terminated only by an August 2023 order of the family court, it would have no effect on Goldstein's rights as a judgment lien creditor. (§ 916, subd. (a)(2); *Lezine, supra,* 14 Cal.4th at p. 65.)

We reject Katy's assertion that the family court, by the dissolution judgment, "confirm[ed] that the [p]roperties are Katy's separate properties and Nishant never held a true ownership interest." Again, though the judgment awarded any interest Nishant had in the properties to Katy, it did not declare their status prior to entry. Each of the properties were "awarded

10

and confirmed to Katy," "whether [they were] separate or community" property.

Accordingly, to the extent the properties were Katy's prior to entry of the dissolution judgment, it has to have been for a reason other than the family court's act of entering the judgment. (See Code Civ. Proc., § 664 ["In no case is a judgment effectual for any purpose until entered."].)

### B. From and After Executing the MSA in February 2023, Nishant Held Only Bare Record Title to the Properties

The evidence is undisputed that the parties entered into the MSA in February 2023 before Goldstein recorded the abstract of judgment in June 2023. As further explained below, the MSA was enforceable as between the parties before the family court entered it as a dissolution judgment in August 2023. The effect of the MSA was to transmute the properties, to the extent they were previously community property, to Katy's separate property. As a result, when Goldstein recorded his abstract of judgment, Nishant had no interest in the properties to which Goldstein's judgment lien could attach.

*Litke* guides our analysis. The plaintiff in *Litke* obtained a judgment against Richard Tipton in 2009. A proceeding for the dissolution of Richard's marriage to Marcia Tipton commenced in December 2010. (*Litke*, *supra*, 204 Cal.App.4th at p. 1181.) On January 18, 2011, pursuant to Code of Civil Procedure section 708.320, subdivision (a), the judgment creditor-plaintiff began serving notices of a motion for a charging order against

11

corporate and partnership interests held in Richard's name but did not serve Richard.[2] (*Litke*, at p. 1181.)

The same day, Richard and Marcia executed an MSA assigning half of Richard's corporate and partnership interests, formerly community property, to Marcia, while assigning full liability for the plaintiff's judgment to Richard. (*Litke*, *supra*, 204 Cal.App.4th at p. 1181.) The MSA provided it would be incorporated into the judgment of dissolution, but also provided it would be independently valid and binding whether or not that occurred. (*Ibid.*)

The plaintiff did not serve Richard with notice of its motion for a charging order until January 24, 2011—after Richard and Marcia executed the MSA. (*Litke*, *supra*, 204 Cal.App.4th at p. 1181.) On January 28, 2011, the plaintiff served both Marcia and Richard with a second motion for a charging order relating to the interests of Richard, and now Marcia, that were the subject of the first motion. (*Ibid.*)

The family court entered a judgment of dissolution incorporating Richard and Marcia's MSA on January 31, 2011. (*Litke*, *supra*, 204 Cal.App.4th at p. 1181.)

Over Marcia's objections, the trial court granted the plaintiff's charging order, continuing the lien on the interest imposed by service of notice of the charging motion. (*Litke*, *supra*, 204 Cal.App.4th at p. 1181; see also Code Civ. Proc., § 708.320,

---

[2] Code of Civil Procedure section 708.320, subdivision (a) provides: "A lien on a judgment debtor's interest in a partnership or limited liability company is created by service of a notice of motion for a charging order on the judgment debtor *and* on either of the following: [¶] (1) All partners or the partnership. [¶] (2) All members of the limited liability company." (Italics added.)

subd. (b).) Marcia appealed, and the Court of Appeal reversed the order granting the charging order.

The *Litke* court's analysis began with Family Code section 916, subdivision (a)(2)'s provision that, after division of community property, "the property received by a [married] person in the division [of community property] is not liable for a debt incurred by the person's spouse before or during marriage, and the person is not personally liable for the debt, unless the debt was assigned for payment by the person in the division of the property." (See *Litke*, *supra*, 204 Cal.App.4th at p. 1182.) There, as here, the question therefore came down to when the division occurred. (*Ibid.*)

Turning to Family Code section 2550, the *Litke* court observed the default rule is the family court divides property at the time of judgment or after, but this rule is subject to exceptions, including " '*the written agreement of the parties.*' " (*Litke*, *supra*, 204 Cal.App.4th at pp. 1182, 1184.) When the parties make such a written agreement, the court concluded it is the parties, and not the family court, that effect the division. (*Id.* at p. 1184.)

In addition to Family Code section 2550, the *Litke* court identified sections 1500 and 1502, subdivision (b) as establishing the parties' authority to privately divide their property. (*Litke*, *supra*, 204 Cal.App.4th at p. 1183.) Section 1500 provides "[t]he property rights of the parties prescribed by statute may be altered by a . . . marital property agreement." Confirming the operative effect of such an agreement without a court order, section 1502, subdivision (b) provides that "[r]ecording or nonrecording of a . . . marital property agreement has the same effect as recording or nonrecording of a grant of real property."

13

Because these sections allow married persons to "contract with each other *at any time* regarding property," the *Litke* court concluded "court approval in a dissolution proceeding is not a prerequisite to the enforcement of an MSA in an independent action, unless the agreement requires such approval." (*Litke*, at pp. 1183, 1184.)

Turning to the facts before it, the *Litke* court held: "Because [Richard and Marcia's] MSA divided the community estate prior to [the plaintiff's] motion to charge interests in certain assets subject to that division, [the plaintiff] could not satisfy its judgment against [Richard] by resort to [Marcia's] interest in those assets." (*Litke*, *supra*, 204 Cal.App.4th at p. 1184.) It further clarified, "the MSA transmuted [Marcia's] community property interest in the properties in question into separate property prior to the time [the plaintiff] pursued its motion for charging orders against the property. Charging liens therefore did not attach, and [the plaintiff] was not entitled, to orders charging [Marcia's] confirmed separate property." (*Id.* at p. 1185.)

The same reasoning applies here. Katy and Nishant executed their MSA before Goldstein recorded his abstract of judgment. Thus, at the time he recorded his abstract of judgment, division of the community property had already been accomplished and Nishant had no interest to which Goldstein's judgment lien could attach. Yes, the titles to the properties continued to show Nishant was a joint owner. But Katy and Nishant's failure to earlier record deeds reflecting the transactions effected by the MSA did not change the effect of the MSA as to a judgment creditor like Goldstein. (*Davis v. Perry* (1932) 120 Cal.App. 670, 676 ["An unrecorded deed takes precedence over a subsequent judgment against the grantor."];

14

see also *Spear v. Farwell* (1935) 5 Cal.App.2d 111, 114 ["a court of equity will always permit the real owner to show that the apparent ownership of another is or was not real; and when the judgment debtor has no other interest except the naked legal title, the lien of judgment does not attach"].)

Despite Katy arguing in her respondent's brief, and citing to *Litke* in support of the proposition, that "[a]n enforceable settlement agreement suffices to accomplish a division of community property into sole and separate property without need to await a valid judgment of dissolution" such that the MSA was effective in February 2023, Goldstein did not address it on reply, continuing to treat the MSA as having first come into existence when the family court entered it as part of its judgment of dissolution.

Goldstein did, however, address *Litke* at oral argument, raising two distinctions between this case and *Litke* that we conclude are not material. First, he noted the MSA did not expressly provide it was effective even without family court approval, and claimed it lacked language giving it immediate effect. And second, he noted this case involves the transfer of real property as opposed to the intangible property involved in *Litke*, and asserted Family Code section 852, subdivision (b) rendered any transfer effected by the MSA ineffective against him because it was not recorded before he recorded his abstract of judgment. We disagree.

The *Litke* court held "court approval in a dissolution proceeding is not a prerequisite to the enforcement of an MSA in an independent action, unless the agreement requires such approval." (*Litke, supra*, 204 Cal.App.4th at p. 1184.) Although the MSA in that case expressly provided it *would* be enforceable

15

in the absence of court approval, such language is unnecessary under the rule stated in *Litke*.

For the reasons explained in *Litke*, preapproval enforceability is both warranted and important in the context of MSA's. First, the court's role in such agreements is ministerial: "[T]he court does not have a role in approving or disapproving property divisions agreed to by the parties. Its only role is to accept the agreement and, if requested, incorporate the disposition into the judgment." (*Litke*, *supra*, 204 Cal.App.4th at p. 1184.) Second, "it would be unfair to require parties to an MSA to await entry of a judgment in some uncertain, future date in order to effect the disposition of property to which they have already agreed." (*Id.* at p. 1185.)

Here, although unnecessary under *Litke*'s presumption of immediate effectiveness, the MSA contains provisions that affirmatively show it was to have immediate effect. The parties stipulated it was their "mutual desire and wish to *immediately effect* a full, complete, and final settlement and to irrevocably adjust and determine forever all property rights which may exist with respect to each other and by reason of their marriage, and to resolve fully and completely all issues related thereto, except as specifically set forth herein." (Italics added.) That this division was intended to be "immediate[]" upon execution is confirmed by other provisions. For example, "[e]ach party recognize[d] and acknowledge[d] *by execution* of this Stipulated Judgment that . . . each party accepts the division of community as full and complete satisfaction of all community property rights." (Italics added.) And, the parties did not have to await the family court's order to document the division: "The parties shall, *concurrently herewith, or* at any time after this Stipulated Judgment is approved and

16

made the [family court's] order, on the demand of the other party [take such action] as may be necessary, appropriate, reasonable, or convenient to carry out the terms and conditions of this Stipulated Judgment . . . ." (Italics added.) Thus, by its terms, Katy could have demanded deeds to the properties when she signed the MSA.

Finally, we note Goldstein recognized Katy and Nishant intended the MSA take effect upon execution when he accused Katy in the trial court of "attempt[ing] to 'convert' the Properties to her separate property . . . in February 2023."

Family Code section 852, subdivision (b) provides: "A transmutation of real property is not effective as to third parties without notice thereof unless recorded." We do not interpret this reference to "third parties" as affording protection to judgment creditors like Goldstein. First, the rights of a judgment creditor are entirely derivative of those of his judgment debtor. (See *Juarez v. Ward* (2023) 88 Cal.App.5th 730, 740–741 ["Because a judgment is a lien only on the interest of the judgment debtor, latent equities against the debtor may be asserted against his judgment creditor, who 'is subject to all prior interests in the property, whether known or unknown, recorded or unrecorded.' "].) Thus, if the debtor spouse is bound by a transmutation agreement, so too must be his judgment creditor.

Second, this interpretation aligns Family Code section 852, subdivision (b) with the parallel section 1502, subdivision (b). Again, the latter states: "Recording or nonrecording of a . . . marital property agreement has the same effect as recording or nonrecording of a grant of real property." This language more precisely states what the Law Review Commission comments say section 852, subdivision (b) means: "Section 852 makes clear that

17

the ordinary rules and formalities applicable to real property transfers apply also to transmutations of property between the spouses." (Citing Civ. Code, §§ 1212–1217 as to the effect of recording.) Reading these statutes in harmony is necessary to avoid treating a section 850 transmutation agreement differently than a section 1500 marital settlement agreement, even though they may achieve the same purposes. (See *Gately v. Cloverdale Unified School Dist.* (2007) 156 Cal.App.4th 487, 494 ["Statutory provisions that are . . . related to the same subject[] should be construed together as one statute and harmonized if possible."].)

Under California real property law, the "grant of an estate in real property is conclusive against the grantor, also against everyone subsequently claiming under him, except a purchaser or encumbrancer who in good faith and for a valuable consideration acquires a title or lien by an instrument that is first duly recorded." (Civ. Code, § 1107.) A judgment creditor is not a good faith encumbrancer for value. (*Fulkerson v. Stiles* (1909) 156 Cal. 703, 705–706; *Wells Fargo Bank v. PAL Investments, Inc.* (1979) 96 Cal.App.3d 431, 438.) Similarly, only a good faith purchaser or encumbrancer for value is protected against unrecorded prior transfers. (§ 1214.) Therefore, an unrecorded transfer of real property takes precedence over a judgment lien. (*Wells Fargo*, at p. 438.) Thus, Nishant's February 2023 grant of his interests in the properties to Katy is conclusive against Goldstein.

In short, the analysis in *Litke* remains dispositive on the undisputed facts presented here.

## DISPOSITION

The order is affirmed. Katy is entitled to her costs on appeal.


RICHARDSON, J.


WE CONCUR:



CHAVEZ, Acting P. J.



GILBERT, J.*

---

* Retired Presiding Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.